JAS. H. DUKE ET AL. V. E. R. REED ET AL.

(Case No. 1790.)

1. ABANDONMENT — SEPARATION.— See opinion for facts held sufficient to constitute abandonment. The law will not justify a separation of husband and wife, brought about by jealousy, unless there is reasonable cause for that jealousy.

2. ABANDONMENT — HOMESTEAD.— The abandonment of a husband by a wife, without cause, and continuing until his death, will cause her to forfeit all claim to the homestead which the husband owned at the time of his death. Trawick v. Harris, 8 Tex., 312; Earle v. Earle, 9 Tex., 630; Sears v. Sears, 45 Tex., 557.

3. LIMITATION — HEIRS — ADMINISTRATORS.— Heirs of an intestate have as much right to hold lands of the estate against the administrators of the estate as against any other person asserting title in opposition to their vendor, and the administrators are as much bound to sue them within the statutory time as any other possessor holding under a title adverse to the estate.

4. LIMITATION — ADMINISTRATORS.— Two heirs of an estate brought suit against another heir, who had been in possession of lands of the estate for five years, claiming under an adverse title. The administrators, as intervenors, attempted to avoid the bar of five years' limitation by alleging that within the five years they intervened in another suit against defendant, in which it was sought to subject the property to the debt of a particular creditor; in that suit they set up the same cause of action against defendant as in the present, and the former suit was still pending. Held, that their intervention in the former suit did not protect them against the statute of limitation pleaded in the latter.

5. COMMUNITY.— See facts held sufficient to rebut the presumption that land bought by a husband was community.

6. MORTGAGE.— The assignee of a debt, secured by mortgage on land which the assignee is in possession of, and holds the claim as a lien upon, cannot be disturbed by one claiming under the mortgagor, until the mortgage debt is satisfied. Loving v. Milliken, 59 Tex., 423; Hannay v. Thompson, 14 Tex., 142.

7. HOMESTEAD — MORTGAGE.— Formerly a mortgage on a homestead attached to it immediately on the death of the owner, leaving no member of his family surviving in whom the homestead right could vest, though such is not the rule under our present constitution. Lee v. Kingsbury, 13 Tex., .68; Stewart v. Mackey, 16 Tex., 56; Inge v. Cain, decided at the present term.

8. EQUITY.— One of the heirs in possession of the lands of the estate paid off a just and legal claim which was a charge on the estate. Held, that the other heirs could not recover their portion of the land until they paid their portion of the debt with interest thereon.

9. TENANTS IN COMMON — RENTS.— A tenant in common, while in possession of the common property, purchased at a sheriff's sale, foreclosing a lien upon the land, and then claimed title adversely to his co-tenants. Held, that after paying their part of the debt secured by the lien, his co-tenants were entitled to their share of the rents, allowing him the value of improvements, etc.

VOL. LXIV — 45

APPEAL from Caldwell. Tried below before the Hon. L. W. Moore.

On the 26th day of March, 1880, the plaintiffs, E. R. Reed and Margaret A. Burleson, joined by their husbands, under leave of the court, filed their second amended original petition, in which Robert N. Reed joined them; they reiterated their allegations that they and Martha A. Duke, wife of appellant, were the sole heirs-at-law of Robert Dorn and his wife, Mary Dorn; they alleged the death of Robert and Mary H. Dorn, the ownership of Robert Dorn in his own separate right of two hundred acres of land out of the Seals league as a *homestead*, it being an *undivided* part of a tract of six hundred and sixteen acres, the excess of which had been, prior to the death of Robert Dorn, bought by Robert N. Reed at execution sale, which six hundred and sixteen acres were described by field-notes. That Robert N. Reed was a grandson of Robert Dorn, whose parents were dead, and at the date of the death of Robert Dorn was a minor, and constituted the family of Robert Dorn. That more than twenty years before Robert Dorn's death, Mary H. Dorn, his wife, had, without good cause and against his will, separated from and abandoned him, and had continued to live apart from him up to the time of his death. That at the time of their separation they had divided their property, and during the remainder of their lives had held their estates in *severalty*. That Mary H. Dorn did not visit Robert Dorn during his last illness, and was not present at his burial, and did not make any claim to his property.

It was further alleged that Robert Dorn, at the time of his death, owned certain personal property, the same mentioned in their first amended petition. That appellant, Martha A. Duke, joined with her husband, James H. Duke, took possession of and appropriated that personal property, and were in possession of the homestead of two hundred acres and had been appropriating the rents thereof since the death of Robert Dorn in September, 1869, and refused to divide the property or account to plaintiffs for their share, and that the rents were worth $1,000 a year.

That appellants Duke had conveyed certain portions of the land to M. Ussery, A. Farmer and the G., H. & S. A. R. R. Co., who were claiming title thereto.

That of the excess of the six hundred and sixteen acres so purchased by Robert N. Reed, he had sold to Martha A. Duke three hundred acres, and was owner in his own right of the difference of one hundred and sixteen acres, and was entitled to have the same allotted to him in the partition prayed for.

It was further alleged that Mary H. Dorn died in August, 1878, owning a large estate, consisting of $3,000 in money and $1,299 due her by the appellants, Martha A. Duke and James H. Duke, evidenced by their promissory note. That James H. Duke was insolvent, and that Mary H. Dorn died owing no debts, and that there was no administration on her estate. That Martha A. Duke had appropriated the whole of the estate of Mary H. Dorn to her own use, and refused to pay any portion thereof to plaintiffs upon demand. And prayer was made for judgment against the defendants for a decree for partition of "*said two estates;*" for commissions to set aside the homestead of two hundred acres and appraise the same; for judgment against Martha A. Duke for the value of the personal property of Robert Dorn, appropriated by her; for the rents of the land since January 1, 1870; for said $3,000, less $300, which had been paid to plaintiffs; for judgment against Martha A. Duke and James H. Duke for the amount of the one thousand two hundred and ninety-nine dollar note; that the whole be summed up, and if the same exceeded the value of the share of the land to which Martha A. Duke was entitled, that so much thereof as should equal the value of her share of the land be charged to her in offset to her share in the land, and that plaintiffs have judgment over against Martha A. Duke for their share of the balance that might remain due, and for execution against the separate property of Martha A. Duke for such balance; and that the balance of four hundred and sixteen acres of land be partitioned by setting apart to Martha A. Duke three hundred acres thereof, and one hundred and sixteen acres thereof to Robert N. Reed, having due regard for water, soil, timber, etc.; and for general relief.

On the 24th day of September, 1879, J. Nix and L. J. Storey, administrators of the estate of Robert Dorn, filed their petition for intervention, alleging that they were entitled to the custody of the estate; that there were some debts due by the estate and unpaid, and praying to be allowed to unite with the plaintiffs in this suit, to prosecute the same so far as the property of Robert Dorn, deceased, as set out in plaintiffs' amended pleadings, might be involved, and adopting the pleadings for their own, in so far as they applied to the estate of Robert Dorn, deceased, and praying "for judgment against the defendants set out in the pleadings, as prayed for by plaintiffs."

On the 2d day of April, 1880, defendants, M. Ussery and A. H. Farmer, filed their first amended answer, in which one Bingham Trigg, as the vendor of Farmer, intervened as a defendant on behalf

of his vendee, Farmer, and for answer pleaded the general denial, and pleaded specially that on the 29th day of May, 1874, defendants, Duke and wife, had sold to Trigg and Ussery ten and one-half acres of the land for the sum of $525, by deed with general warranty, which ten and one-half acres they set out by field-notes. That Farmer and Ussery were in possession of the land, Farmer holding under deed from Trigg. Farmer and Ussery disclaimed as to all the property sued for except ten and one-half acres, and pleaded that they were purchasers in good faith and had had adverse possession of ten and one-half acres for at least a year before the commencement of this suit, and suggested improvements, and called upon Duke and wife to make good their covenant of warranty, and in case of eviction they prayed for judgment thereon for their purchase money, with interest thereon, and for equity.

On the 30th day of August, 1881, the defendant, the G., H. & S. A. R'y Co., filed its original answer, in which it demurred generally, pleaded the general denial and "not guilty," and pleaded specially the statute of limitation of five years to one hundred feet in width through five hundred acres of land, part of the Solomon Seals league, for the *right of way* for its railroad.

On the 29th day of September, 1881, the appellants, Duke and wife, filed their first supplemental answer, and by way of plea in abatement of the intervention of Robert Dorn's administrators, alleged that as between them the subject-matter of this suit was identical with another suit between the same parties, previously tried in the district court of Caldwell county, and then pending in the supreme court on writ of error, identifying the suit by number, style, parties, subject-matter, prayer and decrees.

Appellants also pleaded the *general denial;* and by way of special defense: 1st. That on the 3d day of November, 1868, Robert Dorn and his wife, Mary H. Dorn, were seized in fee, as community property, of the tract of land referred to by plaintiffs, containing by actual measurement six hundred and sixteen acres, but supposed to contain five hundred acres. 2d. They reiterated their allegation as to the recovery of a judgment by A. W. Dibbrel against Robert Dorn, the sale of the land under execution issued on that judgment, and purchase of the same by Robert N. Reed on the 3d day of November, 1868; and they alleged further that the judgment was a community debt and was in full force on the day of sale. 3d. That on the 3d day of November, 1868, and during the lifetime of Robert Dorn, Robert N. Reed, under his purchase, took possession of the whole of the tract of land, and that his title

thereto was admitted and recognized by Robert Dorn, who continued to live in a house upon the land as a tenant at will of Robert N. Reed, and of the appellant James H. Duke, who was guardian of Robert N. Reed, who was then a minor, until the death of Robert Dorn in 1869. 4th. That at the date of the sale and of the death of Robert Dorn, Robert N. Reed was a minor and a member of the family of appellant, James H. Duke, who was guardian of his person and estate; that at those dates Robert Dorn had no family except his wife, Mary H. Dorn, who survived him, and that at the date of his death Robert Dorn was insolvent. 5th. That after Robert N. Reed attained his majority, Mary H. Dorn asserted title to two hundred acres of land off the end next to the San Marcos river, as a homestead; that her title thereto was recognized and admitted by Robert N. Reed, and that about the 4th day of February, 1871, with his knowledge and consent, she entered upon and took possession of the two hundred acres. 6th. That upon the 4th day of February, 1871, Robert N. Reed conveyed the entire balance of the tract to Martha A. Duke for $1,800 in gold; that the portion so sold was estimated to contain three hundred acres, but contained by actual measurement four hundred and sixteen acres, but was sold in gross without reference to quantity; that appellants immediately took possession of the land under the conveyance, and they pleaded the statute of limitation of five years, setting up possession under registered deed, cultivation, etc., and payment of taxes. 7th. That on the 4th day of February, 1871, while in possession of the two hundred acres, Mary H. Dorn, with the knowledge and consent of all of plaintiffs, conveyed the two hundred acre homestead to appellant, Martha A. Duke, with covenant of general warranty, for $2,000 in gold, which appellant paid and the plaintiffs were estopped. 8th. Appellant pleaded the statute of limitations of three, five and ten years as to all the lands in controversy. 9th. Appellants denied that Mary H. Dorn voluntarily abandoned her husband, but alleged that they had lived upon the land in controversy as a homestead. They admitted that Mary H. Dorn was not with her husband during his last illness, and was not present at his death or burial, but alleged that she was on a visit to her daughter, Mrs. Reed, in Eastern Texas, and did not know of his illness or death until long after his burial. 10th. Appellants describe the four hundred and sixteen acre tract and the two hundred acre tract by field-notes, the description of the two hundred acre tract being identical with that given by plaintiffs in their first amended petition. 11th. That Robert Dorn left no property subject to administration; that none of his prop-

erty ever came into their hands except a small sum of money, insufficient to pay his burial expenses, and was so applied by them; and that the remainder of his property was seized and appropriated by plaintiffs. 12th. That no property of Mary H. Dorn came into the hands of appellants, except $300, which, after the payment of her debts, had been divided among the heirs. That appellants' title to the lands named was jeopardized by this suit, and by the other suit herein referred to, and had been threatened in the life-time of Mary H. Dorn, and before the execution of the note referred to by plaintiffs. 14th. That the money for which the note was given was loaned to, and deposited with, appellants by Mary H. Dorn, when old and in declining health, for the purpose of securing them upon her covenant of warranty and indemnifying them in case of eviction in either of said suits. And that under a written agreement, executed by Mary H. Dorn, on the 1st day of October, 1877, appellants could not be held liable to pay the note until both of said suits were terminated in their favor. . . . 16th. That plaintiffs were liable to appellants for three-fourths of the $500 paid to T. M. Harwood in discharge of the Dorn mortgage. 17th. In answer to the cross petition of Ussery, Farmer and intervenor Trigg, appellants demurred. 18th. Appellants admitted that they had sold to Ussery and Trigg ten and one-half acres of the two hundred acre tract, for $525, but said that since Trigg had sold his interest therein to A. H. Farmer for $125. 19th. Appellants suggested adverse possession for more than a year, and permanent improvements, specifying them, of the value of $5,000. 20th. That the rent of the two hundred acres, exclusive of improvements, was not worth more than $100 per year. 21st. That if Mary H. Dorn had no homestead right in the land, the title to the whole tract vested in Robert N. Reed by his purchase at sheriff's sale, and that appellants were in possession of the entire six hundred and sixteen acre tract, and claimed title thereto, not only under the deeds of Robert N. Reed and Mary H. Dorn, heretofore named, but also under a later deed from Robert N. Reed to the entire tract; and they prayed for judgment quieting their title to the whole of the land sued for, and for general relief.

The following are the rulings, findings and decree of the court:

"This cause coming on this day to be heard, when came the parties plaintiffs, W. T. Reed and wife, E. R. Reed, E. B. Burleson and wife, Margaret Burleson, and also the defendants, Martha A. Duke and husband, James H. Duke, also the Galveston, Harrisburg & San Antonio Railroad Company; also Maston Ussery, also Jona-

than Nix and L. J. Storey, administrators of Robert Dorn, deceased, all by attorney; and it appearing to the court that defendant Duke has, since the commencement of this suit, bought the interest of Robert N. Reed and Adam Farmer, this suit is discontinued as to said Robert N. Reed and Adam Farmer *by consent of parties.* A jury being waived, the cause was submitted to the court. When came on to be heard the demurrer of the Galveston, Harrisburg & San Antonio Railroad Company, which being understood, the same is overruled. And then came on to be heard the defendants' plea in abatement to the petition of intervention of Jonathan Nix and L. J. Storey, administrators of Robert Dorn, deceased, which being understood, was overruled, to which defendants except. And then came on to be heard the demurrer and special exceptions of defendants to plaintiffs' pleadings, which being understood, are sustained so far as the same seek to recover and partition the estate of Mrs. Mary H. Dorn, to which ruling plaintiffs excepted, and as to all the remainder of said exceptions the same are overruled, to which rulings of the court defendants excepted. And the court having heard the testimony and argument of counsel, the following decision is made:

"1. That the two hundred acres of land next to the San Marcos river was the separate property of Robert Dorn, and was his homestead, and that he died, leaving Mrs. E. R. Reed, Mrs. Margaret Burleson and Mrs. Martha A. Duke and Robert N. Reed, his only heirs at law.

"2. That Mary H. Dorn, having wilfully abandoned her husband, was not entitled to the same as her homestead.

"3. That the plaintiffs recover of said defendants one-half of said land, less the ten and one-half acres sold to M. Ussery and B. Trigg, who are found to be innocent purchasers, together with rents at $3.50 per acre on sixty-nine and three-fourths acres per annum, from two years next before the filing of this suit, to the present time, say five years, less $200 allowed for improvements.

"4. That plaintiffs and defendants recover against the intervenors, Jonathan Nix and L. J. Storey.

"5. That the Galveston, Harrisburg & San Antonio Railroad Company recover against the plaintiffs, and that M. Ussery and defendants recover against plaintiffs the ten and a half acres sold to Trigg and Ussery.

"6. That plaintiffs recover all other costs to this date against defendants, and that all subsequent costs of partition be equally divided. It is therefore ordered, adjudged and decreed, etc., etc.

Opinion of the court.

(here follows the formal part of the decree, with field-notes of the land to be divided).

"And it is further ordered by the court that Henry Chapman, Len Barnett and W. B. Walker be appointed commissioners to partition and divide said land and allot to the said Mrs. Burleson and Mrs. Reed together an equal half of said land; and it appearing to the court that the defendant, Mrs. Duke, is the owner of the share of which R. N. Reed would be entitled, said commissioners will allot to Mrs. Duke the other half of said land, and that they make their report, with plot attached, to the next term of this court. And it is further ordered and decreed that the said plaintiffs recover of the defendant, James H. Duke, the sum of $1,020.20, and against defendants, Duke and wife, all costs in this contest with them up to this present date, and that all further costs in this partition be equally divided between plaintiffs and defendants." . . .

*Stringfellow & McNeal*, for appellants, on the land being community property, cited: R. S., art. 2852; Chapman *v.* Allen, 15 Tex., 278, 283; Love *v.* Robertson, 7 Tex., 11; Cox *v.* Miller, 54 Tex., 16; Schmeltz *v.* Garey, 49 Tex., 61; Stanley *v.* Epperson, 45 Tex., 654; Camp *v.* Camp, 18 Tex., 535; Sears *v.* Sears, 45 Tex., 559; Newland *v.* Holland, 45 Tex., 589; Hale *v.* Hale, 47 Tex., 336; Besch *v.* Besch, 27 Tex., 390; McGowen *v.* McGowen, 52 Tex., 667; 1 Bishop on Mar. & Div., §§ 795 to 799; 2 Bishop on Mar. & Div., §§ 75, 76, 78, 83, 87, 93, 126; Thompson on Hom. & Ex., § 278, note 1.

On abandonment forfeiting the homestead right of the wife, they cited: Sears *v.* Sears, 45 Tex., 557; Newland *v.* Holland, 45 Tex., 589; Trawick *v.* Harris, 8 Tex., 312; Earle *v.* Earle, 9 Tex., 630; Wheat *v.* Owens, 15 Tex., 244; Hale *v.* Hale, 47 Tex., 336; Besch *v.* Besch, 27 Tex., 392; Craig *v.* Craig, 31 Tex., 204; 1 Bishop on Mar. & Div., §§ 795, 799; 2 Bishop on Mar. & Div., §§ 75, 76, 78, 83, 87, 93, 126.

On the possession of a mortgagee, they cited: Howard *v.* North, 5 Tex., 290; Walker *v.* Lawler, 45 Tex., 538; Vallis' Heirs *v.* Fleming's Heirs, 29 Mo., 152; 1 Jones on Mort., §§ 869 to 877, 715, 716.

*Harwood, Winston & Harwood*, for appellees.

*Nix & Storey*, for intervenors.

WILLIE, CHIEF JUSTICE.— We think there was enough in the evidence to justify the court below in finding that Mrs. Dorn wilfully

abandoned her husband. The plaintiffs' witnesses proved that Robert Dorn and his wife lived unhappily together in the state of Mississippi before removing to Texas; that whilst he was kind and affectionate to her, she was cruel, harsh and inhuman in her treatment of him, and that this caused a separation between them in that state. This separation was brought about by her leaving her husband, and not by his abandoning her. He came to Texas without her, and she did not follow until some six or seven years afterwards. This, as must be inferred from the evidence, was in consequence of her abandonment, as they separated previously to his emigration, and had divided their property, he bringing only his share to the state.

Sometime after her arrival in Texas, she went to live with her husband again. She then seems to have renewed her harsh treatment, he conducting himself towards her in an affectionate and kind manner. The details of her treatment need not be stated. She seems, however, to have deprived him of all his privileges as a husband, and in some degree of the comfort of his children's society in so far as she was able; to have used violent and insulting language towards him, and to have conducted herself generally in such a manner as was calculated to render his life miserable. The reason assigned for her conduct was jealousy. The only ground of jealousy given by any witness, and that by one only, was that Dorn lived with another woman more than he did with his wife. When, where, and under what circumstances he lived with the woman, or who the woman was, does not appear. It is not shown that he lived with the woman in adultery, or that he committed any breach of conjugal duty in making his home with her. Everything this witness said might have been true, and yet the abandonment have been wilful on the part of Mrs. Dorn.

The law does not propose to encourage the separation of husband and wife by justifying it upon so flimsy a pretext. If it is brought about by jealousy, the jealousy itself must be produced by some reasonable cause, something certain and tangible, not by vague suspicions, and acts which, far from establishing guilt, are not inconsistent with innocence.

The abandonment by Mrs. Dorn having been wilful, or, in other words, without cause, and continuing till the death of her husband, she forfeited all claim to the homestead which he owned at the time of his death, and which she refused to share with him. Trawick v. Harris, 8 Tex., 312; Earle v. Earle, 9 Tex., 630; Sears v. Sears, 45 Tex., 557.

It follows that, upon the death of Robert Dorn, the property in controversy was no longer protected by the homestead exemption, and became subject to his debts. As such, it was assets to be administered by his representatives, the intervenors, Nix & Storey; and if the only question between them and the defendants was as to the homestead character of the property, it would have to be decided in favor of the intervenors. But to the claim of the latter the defendants pleaded peaceable and adverse possession for five years under a recorded deed, accompanied by cultivation, use and enjoyment of the property and the payment of taxes thereon, and the evidence sustained their plea. We see no reason why this should not bar the claim of the intervenors. The defendants had as much right to hold under their deed against the administrators as against any other person asserting title in opposition to their vendor, Mrs. Dorn; and the administrators were as much bound to sue them within the statutory time as any other possessor holding adversely to the title of the estate. Their only answer to this is, that they intervened within the five years in another suit against these defendants, in which it was sought to subject the property to the debt of a particular creditor, and in that suit set up the same cause against the defendants as in the present, and that said suit was still pending. We cannot see how the intervenors can protect themselves against limitation by any other suit except the one in which it is pleaded. The only exception would be where a suit had been commenced for the recovery of the land, and after its termination against the intervenors they had commenced a second suit under the former statutes of this state regulating the action of trespass to try title. But such is not the case here, as the former suit has never been determined, and the intervenors' rights must be determined, so far as limitation is concerned, by this suit alone. As their claim was barred, the court did not err in finding against them.

This leaves the contest between the plaintiffs and defendants alone, and renders it a suit of the former against the latter for the recovery of an interest in the land, and a partition of the tract among the parties. No limitation can affect the plaintiffs, Mrs. Burleson and Mrs. Reed, as they have been continuously under coverture from a date previous to the adverse possession of the defendants.

It is clear that the land was the separate property of Robert Dorn. He and his wife divided their property when they separated in Mississippi, and none of that which he brought with him to Texas and invested in the land is shown to have been such as was set

apart in the division to Mrs. Dorn.   Besides, it was proved that the
common law prevailed in Mississippi, except as modified by statute
which secured to married women their separate property.   Com-
munity property was unknown to Mississippi law.   The land was
bought by Dorn about six months after his arrival in Texas.   The
presumptions were therefore all against the supposition that the
property brought by Dorn to Texas was other than his separate
estate, and his residence here was too short to raise a presumption
that any property of that character could have been acquired after
he reached this state, previous to the purchase.   Thompson v.
Hathcock, decided at the present term.   There were four heirs to
the estate.   Mrs. Duke, having bought out one of those heirs, was
entitled, by this purchase and as heir to her father, to one-half the
land.   Mrs. Burleson and Mrs. Reed were together entitled to the
other half.   They should have recovered that amount, and the land
should have been divided accordingly, had there been no equities to
adjust between the parties.

But it seems that Harwood held a mortgage upon the six hundred
and sixteen-acre tract of which the land in controversy formed a
part.   This mortgage and the debt it secured he transferred to
Mrs. Duke, and it was held by her at the time the present suit was
brought.   She had relieved the land of all claim which the original
mortgagee had to subject it to the debt, and was in possession of
the land, holding this claim as a lien upon it.   Her possession could
not be disturbed by any one claiming under Dorn, the mortgagor,
as did these plaintiffs, until the mortgage debt was satisfied.   Han-
nay v. Thompson, 14 Tex., 142; Loving v. Milliken, 59 Tex., 423.

But it is claimed that the mortgage did not bind the land in con-
troversy because it was at the date of the execution of that instru-
ment the homestead of the mortgagor.   Be it so; but upon the death
of Dorn without any member of his family surviving in whom the
homestead right could vest, the land was deprived of its homestead
character, and the mortgage lien fastened on it immediately.   This
was the law at the time when the mortgage was executed, and also
at the date of the mortgagor's death, though such is not the rule
under our present constitution.   Lee v. Kingsbury, 13 Tex., 68;
Stewart v. Mackey, 16 Tex., 56; Inge v. Cain, decided at present
term.

Hence in the defense of this suit Mrs. Duke was entitled to set up
her equities as holder of the mortgage, and the land could not be
recovered from her by the plaintiffs claiming under Dorn till the
mortgage debt was satisfied.

But this was not the only equity held by the defendant against the land in controversy. The debt upon which Say commenced his suit as a creditor of Robert Dorn to subject the land to the payment of his claim had been paid off by these defendants. That debt appears to have been a charge upon the estate of Dorn, and if a just and legal claim, Duke and wife were entitled to be remunerated *pro tanto* for the amount paid by them in its satisfaction.

We think that no recovery can be allowed the plaintiffs until these two equities of the defendants are adjusted and satisfied. They are entitled to have refunded to them, by the plaintiffs, one-half of the amount paid in satisfaction of the two debts above set forth, together with interest thereon to the date of judgment.

But the defendants have had the use and occupation of the premises, and they must pay one-half of their rental value. This must be calculated from the commencement of their possession; for whilst they were tenants in common with the plaintiffs, they did not recognize this relation, and repudiated all claim of the plaintiffs in and to the premises. We think that in adjusting equities the court should take into consideration the value of the improvements made by the defendants, this value to be estimated as of the date of the commencement of this suit.

The judgment will be therefore reversed and remanded for an adjustment of these mutual demands of the parties, and a partition of the land in controversy, and for that purpose alone. None of the points settled in this opinion nor the facts on which they are based will be reopened, but the court below will go no farther than to inquire as to the amount paid by Duke or Mrs. Duke upon the Harwood mortgage and the Say debt, and charge one-half that amount to the plaintiffs. It will inquire as to the value of the rents of the land during the whole time it has been occupied by the defendants, and charge the latter with one-half the amount. It will ascertain the value of the improvements placed on the land by Duke and wife at the date this suit was begun, one-half this amount to be charged to the plaintiffs, except in the contingency hereafter mentioned. It will direct a recovery by the party in favor of whom the balance shall be found, against the party from whom it may be due. The court will then appoint commissioners to partition the land, and direct them to make such a division thereof between the plaintiffs and defendants as will compensate the party in favor of whom the moneyed judgment shall be rendered, out of the share which would otherwise be·set apart to the other, for the amount of his said recovery; or the court will make such other order as will secure to

such party the money due him before the party from whom it is due can obtain his share of the land. If the land can be so partitioned as to set apart to the defendants the improvements they have placed upon it, this should be done, and the value of the improvements will not then be taken into consideration. The court will direct that the partition be so made as to include within the share allotted to Duke and wife the lands sold by them to their co-defendants, so that their possession may not be disturbed. The court will apportion the costs as is usual in partition cases, or as in its judgment may pertain to justice and equity.

We have not noticed the objections taken to Mrs. Burleson's depositions because the facts proved by them were abundantly established by other testimony.

None of the other assignments of error made by either of the parties demand our attention. The judgment is reversed and remanded with instructions as before stated.

REVERSED AND REMANDED.

[Opinion delivered December 18, 1885.]