TANKERSLEY v. JACKSON et al.
(No. 8419.)

(Court of Civil Appeals of Texas. Ft. Worth. June 24, 1916.)

1. MORTGAGES ☞295(4) — EQUITY OF REDEMPTION — MERGER — ELECTION BY MORTGAGEE.

Where a mortgagee took a deed of the mortgaged land from the mortgagor in satisfaction of the secured note, and in ignorance of the existence of a vendor's lien upon the land, made since the execution of the mortgage, the mortgage lien did not merge with the equity of redemption, but remained in effect and superior to the vendor's lien, since the rule that the purchase by a mortgagee of the equity of redemption merges the two estates if an estate in fee simple would result is not invariably applied in equity; the mortgagee having an election in equity to prevent a merger and keep the equity alive.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 821; Dec. Dig. ☞295(4).]

2. APPEAL AND ERROR ☞934(2)—REVIEW—JUDGMENTS.

It is the duty of the court in reviewing proceedings to indulge in support of the judgment every reasonable inference arising from the facts proven.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. ☞934(2).]

Appeal from District Court, Young County; J. W. Akin, Judge.

Suit by R. L. Tankersley against W. E. Jackson and others. From a judgment for plaintiff, but in favor of the defendant John Pohlman, plaintiff appeals. Affirmed.

Arnold & Arnold and Fred T. Arnold, all of Graham, for appellant. C. F. Marshall, of Graham, for appellees.

CONNER, C. J. The appellant instituted suit in the district court to recover upon six certain notes dated December 30, 1909, maturing December 1, 1910, 1911, 1912, 1913, 1914, and 1915, respectively, and all aggregating $537.50. The notes had been executed by one W. E. Jackson as part of the consideration for a tract of land described in the petition sold by appellant, Tankersley, to Jackson on the same day the notes were executed. To secure the notes the vendor's lien was retained. As a further part of the consideration, Jackson also assumed the payment of a note for $200, executed by a former owner of the land and secured by a deed of trust thereon for the benefit of an insurance company. The plaintiff made, among others, John Pohlman, one of the appellees in this case, a party defendant, alleging that Pohlman was the present owner of the land which was subject to the lien the plaintiff sought to foreclose.

Pohlman answered, among other things, to the effect that he had in due course of trade acquired the $200 note executed for the benefit of the insurance company, as above stated, and he sought to have foreclosed the mortgage lien given to secure the same, which was alleged to be prior in point of time and right to the vendor's lien set up by the plaintiff. To this plea the plaintiff replied by supplemental petition to the effect that the note and debt evidenced thereby had been wholly canceled and extinguished.

The trial was before the court without a jury, and resulted in a judgment for the plaintiff for the amount of his debt, principal, interest, and attorney's fees, with a foreclosure of the vendor's lien as prayed for. It was further adjudged that the defendant John Pohlman was the owner of and entitled to recover upon the $200 note claimed by him, and the judgment established and foreclosed the mortgage lien referred to, making the same superior to that of the plaintiff. From the judgment so rendered, the plaintiff has appealed.

There is but little controversy in the facts. The evidence shows the execution of the notes declared upon by the plaintiff and the assumption of the $200 note by Jackson as the plaintiff alleged. It also shows that the $200 note and mortgage declared upon by the appellee John Pohlman had also been executed and acquired by Pohlman as he alleged in his answer; the assignment to him being upon the 5th day of January, 1914. It further appears that after Jackson's purchase, to wit, on August 9, 1911, Jackson conveyed the land in controversy to one R. J. Johnson "subject" to all of the outstanding notes hereinbefore mentioned. It further appears that on March 8, 1915, Johnson conveyed the land to Pohlman, the deed containing the following recitation:

"It is especially understood and agreed by the grantor and grantee herein that this conveyance is for the purpose of cancellation of a certain deed of trust coupon note dated 28th day of January, 1909, in the sum of $200, given by W. G. Graham to Austin Fire Insurance Company in the city of Dallas, Tex., bearing 8 per cent. interest per annum from date and 10 per cent. additional as attorney's fees, due November 1, A. D. 1913, and, further, that this deed of conveyance is for the purpose of satisfying said lien created by said deed of trust, and for the purpose of clearing any defect of title and to perfect the record title to the above-described land and premises, and to divest all of the right, title, and interest of the grantor herein."

On the same day that this deed from Johnson to Pohlman was executed, to wit, on March 8, 1915, Pohlman dismissed a suit he had theretofore instituted in the district court to recover upon the $200 note owned by him, and to foreclose the mortgage given to secure the same on the land in controversy. It further appears that later, to wit, in September, 1915, Pohlman reinstituted his suit in the district court against said R. J. Johnson and others, again declaring upon his $200 note and mortgage. Pohlman also set forth

in his pleadings in that suit the deed from Johnson to him, and prayed for its cancellation, and on September 7th judgment was rendered in favor of Pohlman in accordance with his prayer, decreeing a foreclosure of the mortgage lien in favor of Pohlman and the cancellation of the deed from Johnson. In this suit, however, the plaintiff in the present action was not made a party.

[1] Appellant's contention upon this appeal is that the court erred in failing to find that the Pohlman note was not paid, and the Pohlman mortgage lien not canceled. It is evident from the evidence that these contentions have their basis upon the recitations above quoted in the deed from Johnson to appellee Pohlman. Pohlman in relation to this matter testified, among other things, to the effect that his note had never been paid; that he had never surrendered or canceled the note; that he did not so intend when his suit was dismissed; that at the time he accepted the deed from Johnson he did not know that Johnson had no right to convey the land; and that he did not then know of the existence of the notes declared upon by the plaintiff in this suit. Johnson is not shown to have assumed the payment of the $200 note, and there is no proof tending to show that at the time appellee accepted the deed from Johnson any additional consideration was paid to Johnson. These facts, when considered in connection with the recitation in the Johnson deed that one of the purposes of its execution was to clear the title to the land in controversy and to divest Johnson of all his right, title, and interest, tend to show, as we think, that the conveyance from Johnson to Pohlman was intended, not as a bargain and sale, but as a short method of foreclosing the lien held by Pohlman to secure the $200 note owned by him. This inference is strengthened by the fact that Pohlman, upon the same day, dismissed the suit he had theretofore filed to foreclose his mortgage, and specifically testified that at no time did he surrender or intend to cancel his note or mortgage, and did not know of the existence of the appellant's lien, never having examined his title in fact. So that he may have reasonably supposed a conveyance from Johnson of all the right or title he had in and to the land would, in legal effect, extinguish all outstanding title and accomplish all that could be effected by a successful prosecution of the suit which he dismissed. It is evident that Johnson owned, as against appellee Pohlman, the equity of redemption in the land under consideration, and ordinarily, where one holding a lien or mortgage upon premises purchases the equity of redemption, there is a merger of the two estates. Ordinarily in such case the conveyance by the one holding the equity of redemption vests in the mortgagee complete title, and puts an end

to his right or title under the mortgage. But, as said in 27 Cyc. p. 1377, par. 2:

"To this end it is necessary that, holding the mortgage already, he should acquire nothing less than the complete legal title in fee, and that the two estates or interests should unite in the same person in the same right. Further, this rule (the rule of merger referred to) is not invariably applied in equity, but may be disregarded, and the fusion of the two estates prevented when, in the particular case, this is required by justice, the well-established principles of equity, or the intention of the parties; the mortgagee having an election in equity to prevent a merger and keep the mortgage alive."

It is further said in the same authority (page 1379, par. "d"):

"The technical doctrine of merger will not be applied contrary to the agreement or the express or implied intention of *the parties; and therefore, in equity, there will be no merger of estates when a mortgagee receives a conveyance of the equity of redemption, when such a result would be contrary to his real intention in the transaction or to the bargain made by the parties at the time. This is the case where the mortgagee means to keep the security alive for his own protection as against other liens or incumbrances, and also where the conveyance is not intended by the parties to be in satisfaction of the mortgage debt, but only as additional security for it."

[2] The author cites numerous cases in support of the text which we will not take the time to scrutinize. But the principle embodied in the quotation was applied in the case of Hapgood Shoe Co. v. First Nat. Bank, 23 Tex. Civ. 506, 56 S. W. 995, with citation of numerous authorities. From all of which we feel unable to say, under the evidence, that the court erred in giving priority to appellee's debt and mortgage.

It is our duty in reviewing the proceedings to indulge in support of the judgment every reasonable inference arising upon the facts proven, and, so considering the record in this case, we conclude that the judgment must be affirmed.

Affirmed.