### ELLIOTT et al. v. C. C. SLAUGHTER CO.
(No. 1864.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 7, 1921. Rehearing Denied Feb. 1, 1922.)

1. Mortgages ⬤295(1) — Lien of mortgage kept alive after satisfaction by conveyance of land to mortgagee.

Where mortgaged land was sold under execution, and thereafter the mortgagor conveyed the land to the mortgagee in satisfaction of his debt, and mortgagee had only constructive notice of the execution sale, from the registration of the sheriff's deed, and went into possession and paid the taxes and interest due the state, he acquired an equitable lien on the land to secure him in the payment of the mortgage, debt, interest, and taxes as a mortgagee in possession, and a grantee of the mortgagee was entitled to the same protection.

2. Limitation of actions ⬤48(7)—Mortgage indebtedness not barred as to mortgagee in possession.

Mortgage indebtedness does not become barred by limitations as against a mortgagee in possession.

Appeal from District Court, Lynn County; W. R. Spencer, Judge.

Action by J. W. Elliott and others against the C. C. Slaughter Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

G. E. Lockhart, of Tahoka, for appellants. Percy Spencer, of Lubbock, for appellee.

BOYCE, J. J. W. Elliott and others, appellants, brought this suit against the appellee, C. C. Slaughter Company, in trespass to try title to 2,080 acres of land in Lynn county, Tex. The defendant, in its answer, specially pleaded the facts hereinafter set out as being proven on the trial and in connection therewith prayed for appropriate relief. A trial resulted in judgment for defendant as hereinafter stated.

Jack Alley is the source of the claim of both parties. He executed several deeds of trust on the land to secure C. C. Slaughter in the payment of various sums of money, and on March 24, 1913, signed and acknowledged an extension agreement recorded on April 29, 1913, by the terms of which the date of maturity of the indebtedness secured by said several deeds of trust was extended to January 1, 1918. In May, 1913, an execution on a money judgment against Jack Alley was levied on this land, and it was sold at execution sale, and bid in by the plaintiffs herein, for the sum of $25. The sheriff executed deed to such purchasers (except that 160 acres of the land was not included in the deed), and the deed was filed for record on January 24, 1913. On July 27, 1914, there was a balance of $12,395.12 due C. C. Slaughter on the indebtedness secured by the liens on the land above referred to, and on said day Alley conveyed said lands by warranty deed to Slaughter in satisfaction and cancellation of such indebtedness. The land was not considered at that time to be worth the amount of the debt against it. Slaughter had no notice, except the constructive notice implied from the registration of the sheriff's deed, of the execution sale above mentioned. Alley was in possession of the land at the time of the execution sale, and continued in possession until he deeded the land to Slaughter, who thereupon went into possession, and he and his grantee have continued in possession of all of said land except 200 acres thereof, which were subsequently recovered by Mrs. Alley as a homestead, until the trial of this cause. During such time they have paid the taxes on the land and the annual interest due the state, a portion of said land having been purchased from the state and only 1/40 of the purchase price paid. In August, 1918, C. C. Slaughter conveyed said land by warranty deed to the C. C. Slaughter Company, a corporation, for a recited consideration of $12,675.00. The deeds from Alley and from Slaughter to the Slaughter Company were promptly recorded.

[1] The case was tried before the judge, who, after finding the facts as above stated, concluded as a matter of law that the plaintiffs were entitled to an equity of redemption, and that upon payment of the sum of $18,674.17 into court for the benefit of the defendant the title be "vested and quieted" in them; that the defendant was entitled to an "equitable lien" on the land to secure it in the payment of said sum of $18,674.17, and that in default of the redemption of the land by the plaintiffs it should be sold and the proceeds paid to defendant to the amount of $18,674.17, and the balance paid to plaintiffs. Judgment was entered accordingly.

If Slaughter had not conveyed the land to the Slaughter Company and the contest was between Slaughter and the plaintiffs, there could be no serious question as to the rights of the parties. In an exactly similar case, Silliman v. Gammage, 55 Tex. 365, the Supreme Court held that—

"To prevent injustice, equity will keep alive a debt, mortgage or judgment, although in law it may have been satisfied, and the parties [at the time] so intended," and that "for the purpose of protecting Silliman [who was in the

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

position of Slaughter in this case] against the intervening claim of Gammage [who occupied appellants' position in this case] the court should have treated the mortgage as in force."

Under the state of facts existing in this case and the law as thus declared, Slaughter should be regarded as a mortgagee in possession and the mortgagor and those holding under him would not be permitted to recover the land without payment of the mortgage indebtedness. Duke v. Reed, 64 Tex. 705; Northcraft v. Oliver, 74 Tex. 162, 11 S. W. 1121; Rodriquez v. Haynes, 76 Tex. 225, 13 S. W. 299; Baker v. Collins, 4 Tex. Civ. App. 520, 23 S. W. 493; Kaylor v. Kelsey, 91 Neb. 404, 136 N. W. 54, 40 L. R. A. (N. S.) 839, and note; Jones on Mortgages (6th Ed.) § 716. The conveyance from Slaughter to the Slaughter Company operated as an assignment of Slaughter's rights under the mortgage, though the mortgage and debt were not mentioned in the deed. Rodriquez v. Haynes, 76 Tex. 225, 13 S. W. 297 (6); Fidelity & deposit Co. v. Albrecht, 171 S. W. 820; R. C. S. art. 1105; Kaylor v. Kelsey, supra; Brobst v. Brock, 10 Wall. 519, 19 L. Ed. 1002; Johnson v. Sandhoff, 30 Minn. 197, 14 N. W. 891; Cooke v. Cooper, 18 Or. 142, 22 Pac. 945, 7 L. R. A. 273, 17 Am. St. Rep. 709; Jordan v. Sayre, 292 Fla. 100, 10 South. 823; Jones on Mortgages (6th Ed.) 808. The appellants rely on the case of Boone v. Miller, 86 Tex. 74, 23 S. W. 574, as holding the contrary to the proposition last stated. In that case one Reiger executed a deed of trust on land to secure a note which subsequently became the property of the Concho National Bank. The land was sold at trustee's sale, which was held to be void, and bought in by the bank. The bank conveyed to Miller, and another trustee's sale was attempted, which was also held to be void, at which Miller purchased. In the meantime, but subsequent to the execution of the deed of trust by Reiger, the land had been sold on execution issued out of a judgment against Reiger, and bought in by Boone and Scarborough. The said Boone and Scarborough sued Miller in trespass to try title for the land. The decision of the case, both in the Court of Civil Appeals and the Supreme Court, was made to turn on a conclusion as to the validity of the two trustees' sales, and the question decided was purely one of legal title. The Supreme Court apparently recognized that Miller had equities which might be protected, but no statement was made as to what his equities were or how they should be protected in the circumstances of the case. It does not even appear that Miller pleaded any equities, and this would have been necessary in any event to avail him anything in a suit over the title. Fuller v. O'Neil, 69 Tex. 349, 6 S. W. 181, 5 Am. St. Rep. 59. It is true that in considering the question of the validity of the last sale the Supreme Court said that—

"The conveyance by the bank to Miller did not operate to transfer to him the debt and the deed of trust."

It does not appear from the statement made by either court that the Concho National Bank was in possession of the property at the time of its conveyance to Miller, and the question of the rights of the mortgagee and his grantee in possession were not considered and, so far as the record discloses, may not have been in the case at all. A reference to the authorities above cited will show that in many cases the fact of possession by the mortgagee at the time of his conveyance is considered as important in determining the question as to whether his conveyance operates as an assignment of the mortgage to his grantee. But there are still other distinguishing features in the case. The note secured by the mortgage was for the sum of $2,425, and the bank's bid at the first trustee's sale was $1,700, "which would leave a large part of the note unpaid," and this fact is stated by the court as being "another reason why the ownership of the note did not vest in Miller by the conveyances from the bank." We do not think that we should regard the decision as being in conflict with the holding in the earlier case of Rodriquez v. Haynes, supra. The proposition stated in that case and restated by us seems to be well sustained by authority and reason. No good reason, we think, can be assigned for refusing to extend to the Slaughter Company the same protection that equity would have extended to its grantor, C. C. Slaughter. We hold, therefore, that the mortgage should be continued in effect and the Slaughter Company regarded as a mortgagee in possession with all the rights incident to such position.

[2] Even if it were true that the mortgage indebtedness had become barred by limitations, yet the defendant's right to hold possession until the debt was paid "was wholly unaffected by the lapse of time or limitation." Rodriquez v. Haynes, and other authorities above cited. But the indebtedness was not barred. The extension agreement, fixing the maturity of the indebtedness on January 1, 1918, complied with the law as to such matter. R. S. art. 5695.

No question is raised by either party, though there is some such suggestion in appellee's argument, that requires us to determine whether it was necessary for the court to have decreed a sale of the premises upon failure of the plaintiffs to redeem, nor is any question raised as to the assessment of the amount fixed as necessary to redeem.

These general conclusions are sufficient to dispose of all the assignments presented by appellants without particular reference thereto. We conclude that they should be overruled, and the judgment affirmed.