**TUCKER et al. v. COLEMAN et al.**

No. 13916.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 15, 1939.

Rehearing Denied Jan. 19, 1940.

Smithdeal, Shook & Lefkowitz, of Dallas, for appellants.

Read, Lowrance & Bates, of Dallas, for appellees.

DUNKLIN, Chief Justice.

In the year 1922, H. H. Tucker, Jr., by an instrument in writing, created a common law trust, to be known and designated as "Texas American Syndicate, H. H. Tucker, Jr., sole Trustee", for the purpose of acquiring oil leases and mineral interests in lands in Texas, title to all of which was to be conveyed to "Texas American Syndicate, H. H. Tucker, Jr., sole Trustee", with full general power in said grantee to buy, manage, control, mortgage and dispose of same on such terms and for such prices as it might deem proper. The instrument provided for the issuance and sale of shares in the enterprise, giving shareholders the right to participate in the profits, but with the further provisions that "the right of the said trustee to manage, control and administer said trust estate shall be absolute and unconditional, free from the control and management of the shareholders."

On March 12th, 1931 the Syndicate, by deed of conveyance, purchased from Gladys C. Coleman, joined by her husband, J. S. Coleman, an undivided one-half interest in all the oil, gas and other minerals in the east 1,000 acres out of a tract of land known as the Hood County School Land, situated in Coleman and Taylor Counties, Texas. The consideration for said conveyance was the sum of $7,510, of which $10 was cash and the balance in 15 promissory notes of the grantee, in the sum of $500 each, payable to the order of Gladys C. Coleman and J. S. Coleman, falling due, respectively, the first, on March 15th, 1931, and one at the expiration of every four months thereafter, all secured by a vendor's lien retained in the deed.

On the same date, to-wit, March 12th, 1931, said Syndicate acquired from said Gladys C. Coleman and J. S. Coleman an oil and gas mineral lease on an undivided one-half interest in a tract of 3,000 acres out of the Hood County School Land, situated in Coleman and Taylor Counties. The consideration for that lease was $7,500, payable in equal instalments of $500 each, payable respectively on July 15th, 1931, and at the expiration of each four months thereafter. A vendor's lien was retained in the instrument on the property, to secure payment of said notes; with a further agreement by the lessee to pay certain oil royalties on the oil to be produced from the tract covered by the lease.

On July 21st, 1931, the Syndicate executed and delivered to the Centennial Oil & Gas Company all its right, title and interest in 67 tracts of land, situated in different portions of the State, one of which included 2,000 acres of the lands theretofore acquired by the Syndicate from Gladys C. Coleman and J. S. Coleman, shown above. The consideration for that conveyance was 35,990,000 non par value shares of stock of the grantee corporation, and the assumption of $300,000 of indebtedness owing by the grantor, and secured by its deed of trust on some of the property conveyed, besides the two tracts it acquired from Gladys C. Coleman and J. S. Coleman, shown above.

The Centennial Oil & Gas Company was placed in the hands of a receiver in a suit filed against it in the district court of the 95th judicial district, Dallas, wherein Joseph Vogner et al. were plaintiffs and the Centennial Oil & Gas Company was defendant. Thereafter, J. S. Coleman and

wife, Gladys C. Coleman, filed in that receivership proceeding their plea of intervention, claiming superior vendor's liens retained by them on the two tracts they had conveyed to the Syndicate to secure payment of the purchase money notes alleged to be due and unpaid, and also seeking a recovery against the Centennial Oil & Gas Company for the unpaid notes, on allegations of its assumption thereof as a part of their contract of purchase from said Syndicate.

On May 14th, 1935, Gladys C. Coleman and J. S. Coleman entered into a written agreement with George B. Ray, receiver of the Centennial Oil & Gas Company, by the terms of which that company consented to relinquish to the Colemans all rights acquired by the Centennial Oil & Gas Company from the said Syndicate, under the latter's deed of date July 21st, 1931, noted above, and the Colemans would waive any claim of personal liability of the Centennial Oil & Gas Company, growing out of its deed of conveyance by the Syndicate of said two properties.

That agreement of the parties was duly approved by the receivership court and a deed by the receiver to the Colemans in fulfillment of said contract was duly confirmed by the court.

On June 11th, 1934, in a suit instituted by Charles C. Looney et al. against H. H. Tucker, as sole trustee of the Texas American Syndicate, a common law trust, and the Texas American Syndicate, the district court of Parker County for the 43rd judicial district, appointed J. H. Doss receiver of said Syndicate, with authority to take over all its property and assets, subject to the orders of that court; with a further order requiring all persons claiming any interest in the properties or debts against same to file pleas of intervention in the case, setting up such claims.

On March 28th, 1935, J. S. Coleman and wife, Gladys C. Coleman, filed their plea of intervention in that receivership proceeding, in which they sought a recovery against the receiver and the Texas American Syndicate for the unpaid balance on the notes given by the Syndicate for the two properties purchased from the interveners, and for foreclosure of the vendor's liens given to secure them. After the plea of intervention was filed, J. S. Coleman died. His children and only surviving heirs then deeded to their mother, Mrs. Gladys C. Coleman, all their interests in the notes and liens in controversy. The intervention was then prosecuted by the mother, as sole owner, and judgment was rendered in her favor for the relief prayed for, from which the receiver and the Syndicate have appealed.

The case was tried before the court without a jury, and findings of fact and conclusions of law by the trial judge appear in the record here. The facts recited above were established by uncontroverted evidence and they were included in the court's findings as the basis of the judgment rendered.

■ The statement of facts shows that defendants introduced in evidence a conveyance executed by Edward C. Coleman, J. S. Coleman, Jr., and Gladys Coleman to Mrs. Gladys C. Coleman, their mother, of all their interests in the notes and liens sued on, reciting that the grantors were the children and only children of Mrs. Gladys C. Coleman and John S. Coleman, deceased, and that there had been no administration or necessity of administration on the estate of John S. Coleman. With that showing in the record, there is no merit in appellants' complaint of lack of evidence to prove that those persons were children and only children of Mrs. Gladys C. Coleman and John S. Coleman. Furthermore, there is no challenge of the further finding by the court that the notes and liens were the separate property of Mrs. Gladys C. Coleman.

Appellants cite a provision in the declaration of trust noted above, to the effect that the trustee, H. H. Tucker, Jr., could not bind the Texas American Syndicate to the payment of any note or mortgage, trust deed, unless delivery of same be made by the trustee in person or by his agent, acting under written authority of the trustee.

■ Appellants then cite testimony of Wm. F. Tyree, tending to show that the notes were not delivered to John S. Coleman and Mrs. Gladys C. Coleman by the trustee in person or by any one with his written authority. But, according to the undisputed evidence, Mr. and Mrs. Coleman executed and delivered to the trustee of the Syndicate the mineral deed and lease, and received therefor the notes in suit, through some apparent agent in possession thereof. Thereafter, the Syndicate and trustee made payments on the notes and asserted title to the property so conveyed by the Colemans. And Mrs. Coleman had possession of the notes at the time of the trial.

Under such circumstances we fail to perceive any merit in the assignment now under discussion.

 As shown in the transcript, in their original plea of intervention filed in the 95th judicial district of Dallas, in the receivership proceedings in the case of Joseph Vogner v. Centennial Oil & Gas Co., Mrs. Gladys C. Coleman and her husband, J. S. Coleman, claimed their vendor's lien reserved in their deed and lease they had executed to the Syndicate, as against that company, and also sought a personal judgment against the Centennial Oil & Gas Company on the purchase money notes secured thereby, on allegations of assumption thereof by the Centennial Oil & Gas Company. In reply to that plea the receiver of the Centennial Oil & Gas Company denied such assumption. Thereafter, the interveners amended their first plea of intervention, in which they abandoned former allegation of such assumption. The interveners and said receiver then had a compromise settlement which was approved by the court, by which the receiver of the Centennial Oil & Gas Company relinquished to the interveners any claim of interest in the notes and in the properties which the Colemans had sold to the Syndicate. Interveners agreed not to assert any claim of personal liability of the Centennial Oil & Gas Company on the notes. The former allegation of such assumption by the Centennial made in the original plea of intervention, was made through mistake. And in the order of court approving said compromise settlement, it was expressly decreed that the same was made without prejudice to the right of the interveners to enforce payment of the notes by the Syndicate, who executed them, just as was stipulated in the settlement agreement on which the order was made. We believe it clear that those facts conclusively show that there is no merit in the assignments presenting these contentions: (a) that the liens in suit here were released by said settlement; (b) that the mineral deed and lease executed by the Colemans to the Syndicate were thereby rescinded; (c) that said settlement operated as an estoppel of Mrs. Coleman to claim that the Texas American Syndicate, H. H. Tucker, Jr., Sole Trustee, is now liable to her on said notes and for a foreclosure of the liens given to secure their payment; (d) that said settlement operated as an extension of the notes in suit, without consent of the makers, by reason of which the maker was released from liability thereon. We shall not undertake a discussion of authorities cited by appellants to support those contentions, because they involve facts which are distinguishable from the facts in this case, and therefore are not in point. Nor do we believe they are at variance in principle from any of our foregoing conclusions which, in our opinion, are in accord with well established principles announced in many authorities.

 But in answer to the argument stressed by appellant that the evidence showed a merger of the debts and liens for which plaintiff seeks a recovery in this suit, with the claim presented by the Colemans in their intervention in the receivership of the Centennial Oil & Gas Company, we will add that there could be no such merger in the absence of an intention to accomplish that result, and the evidence noted above conclusively refutes such an intention. Tankersley v. Jackson, Tex.Civ.App., 187 S.W. 985; Elliott v. C. C. Slaughter Co., Tex.Civ.App., 236 S.W. 1114; 41 C.J., § 744, page 709.

For the reasons noted, all assignments of error are overruled and the judgment of the trial court is affirmed.