NARCISSO RODRIGUEZ ET AL. V. JOHN V. HAYNES ET AL.

No. 2579.

1. **Erasures in Ancient Instrument.**—On the production of an instrument, if it appears to have been altered, it is incumbent upon the party offering it in evidence to explain this appearance. If nothing appears to the contrary the alteration, it is said, will be presumed to be contemporaneous with the execution of the instrument. If any ground of suspicion is apparent upon the face of the instrument the law presumes nothing, but leaves the question of the time when, the person by whom, and the intent with which the alteration was made as matters of fact to be found by the jury upon proofs to be adduced by the party offering it.

2. **Case in Judgment—Presumption—Erasures.**—A mortgage regularly exe-

cuted in 1833 for a league of land granted to the mortgagor, a colonist, purported to have been made to secure a loan of $5000 for six years, the mortgagee to pay dues and taxes and to have possession. After the maturity of the debt the instrument was proven up (in 1840) by one of the witnesses. The mortgagor left the country, and in Mexico it was shown he disclaimed owning land in Texas. Possession was taken and held by the mortgagee, and continued by his heirs and their assigns up to the trial. *Held*, that the presumption of law was that erasures patent upon the face of the instrument were made at its delivery.

3. **Same.**—But without the presumption of law in its favor the instrument evidently conveyed the land to either the named mortgagee, or to him and another whose name may have been erased, on which hypothesis the heirs of the mortgagor would take no interest in the land.

4. **Same.**—But if the erasures were grounds of suspicion, the finding of the court passing upon the entire evidence produced in support of the instrument would be conclusive in finding its validity.

5. **Recitals.**—The recitals of the particulars of the grant, and that the documents evidencing it were delivered with the mortgage, would be conclusive that the conveyance was made subsequent to the grant.

6. **Executed Contract in Violation of Law.**—The heirs of a grantor in a conveyance in contravention of law can not recover the land by reason of their legal title against one in possession under such contract without refunding the money received by their ancestor.

7. **Mortgagee in Possession.**—Where the mortgagee by the terms of the instrument is placed in possession of the land so mortgaged, the mortgagor can not recover possession after the condition broken without payment of the debt secured thereby.

8. **Notice of Claim.**—The possession of the land would operate as notice of the claim to it by the mortgagee in possession.

9. **Probate Proceedings in Partition—Evidence.**—Where probate proceedings in partition are offered in evidence to show continual claim to the land in controversy, and not as title, it is not necessary that they be recorded in the county where offered in evidence.

10. **Witness—General Conclusions.**—Where a case was on trial before the judge without a jury it is no ground for reversal that a witness testified to general conclusions, especially when the witness had carefully testified to facts evidencing such conclusion.

11. **Circumstantial Evidence of Deed.**—See facts held sufficient to support a finding by the court of the existence of a deed.

APPEAL from Jackson. Tried below before Hon. W. H. Burkhart. The opinion states the case.

*Francis M. White* and *J. D. Owen*, for appellants.—1. The mortgage should have been excluded on account of unexplained erasures thereon. Park v. Glover, 23 Texas, 470; Harper v. Stroud, 41 Texas, 372; Miller v. Alexander, 13 Texas, 505; 1 Greenl. on Ev., 464, 465.

2. The mortgage was void, because in contravention to the law in force at its date. Brown v. Simpson, 67 Texas, 226; Holmes v. Johns, 56 Texas, 49; Atkinson v. Bell, 18 Texas, 478; Williams v. Chandler, 25 Texas, 4; Burleson v. Burleson, 11 Texas, 2; Hunt v. Robinson, 1 Texas, 748; Grant v. Wallis, 60 Texas, 351; Babb v. Carroll, 21 Texas, 68; Hunt v. Turner, 9 Texas, 385.

3. The mortgage was never assigned to defendants, nor was the debt on which it was based. Perkins v. Sterne, 23 Texas, 563.

4. The mortgage was no evidence of title in defendant. Beale v. Ryan, 40 Texas, 399; Ruffier v. Womack, 30 Texas, 340; Sprague v. Ireland, 36 Texas, 654; Ross v. Mitchell, 28 Texas, 150; Duty v. Graham, 12 Texas, 427.

5. The legal conclusions allowed to be given by the witness Dimitt were incompetent, as was also his reference to a deed from Narcisso Rodriguez to Jones, administrator. Parks v. Caudle, 58 Texas, 219; Wade v. Eckford, 28 Texas, 520; Dikes v. Miller, 24 Texas, 422; Johnson v. Alexander, 14 Texas, 385; 1 Greenl. on Ev., 387.

Counsel further controverted the findings of fact upon matters not discussed in the opinion.

*Glass & Callender,* for appellees. — 1. The erasures are not material, and need no explanation. This rules applies especially to this document, which was executed under the Mexican civil law, and was recorded, with these same erasures on its face, while that law was still in force. 1 Greenl. Ev., 14 ed., sec. 564, note 3.

2. As nothing appears to the contrary, the alterations will be presumed to have been contemporaneous with the execution of the instrument. The alterations are free from any suspicion of being made with any fraudulent intent.

3. If there had been any apparent ground for suspicion, the law would presume nothing, but leave the question as to the time and intent of the alterations to be decided by the jury (or the court trying the cause without a jury). In this case the court tried the cause, and decided in favor of the admissibility of the document and the good faith of the alterations. 1 Greenl. on Ev., secs. 564, 654, 655.

4. According to the translation of General De Bray, which is agreed upon as correct, the document is dated September 30, 1833. It bears internal evidence that it was not executed in February, 1833.

5. If the mortgage was prohibited when made by the restrictions then in force, it could be ratified and confirmed after the restrictions were removed; and if after the restrictions were removed Dimitt, acting upon the mortgage as valid, took possession of the land, and he and those claiming under him held possession for a great part of the time during forty-six years, openly claiming to own the land and exercising ownership over it during all that time, while Rodriguez and his heirs asserted no claim and never attempted to disturb the possession of Dimitt and those holding under him, these facts show not only a ratification of the original mortgage, but an acquiescence in and confirmation of Dimitt's claim to hold the land as satisfaction for the debt. Hart. Dig., art. 1860.

6. If the mortgage of the land made by Rodriguez to Dimitt was

illegal, still as Rodriguez obtained a loan of $5000, for which he thus mortgaged the land, and as by the terms of the instrument Dimitt was to have the possession and use of the land, if Dimitt did take possession of the land, and if the defendants below hold under him and have his rights, neither Rodriguez nor his heirs can dispossess them without refunding the money borrowed and the interest thereon. Hunt v. Turner, 9 Texas, 385; Mills v. Alexander, 21 Texas, 154, 163; Ledyard v. Brown, 27 Texas, 393, 404; Brobst v. Brock, 10 Wall., 532; Davis v. Gaines, 104 U. S., 386, 403–406.

7.   There being in this case no evidence of debt separate from the mortgage, and Dimitt having under the mortgage the right to hold and use the land until the debt was paid, he had a right in and to the land, which he and his heirs could transfer; and the heirs having conveyed the land with warranty of title, all his right under the mortgage passed to his vendees, and they became assignees in equity of that mortgage. Jones on Mort., sec. 808, and authorities.

8.   Dimitt and those holding under him being in possession of the land under the terms of the mortgage, their right could not be defeated by the statute of limitation or lapse of time while the debt remained unpaid. Hannay v. Thompson, 14 Texas, 142, 145; Calhoun v. Lumpkin, 60 Texas, 185, 190; Duke v. Reed, 64 Texas, 705, 715; Hudson v. Wilkinson, 61 Texas, 606; Pome. Eq., secs. 1189, 1215; 3 Wait's Act. and Def., 67; Id., 567, 568.

9.   A mortgagee in possession can never be ousted by the mortgagor, or any claiming under him, till the mortgage debt be paid. Time can never run against him, because he is in the actual possession of all the law gives him, and the possession itself is prima facie evidence that the money is not paid. Dem v. Wright, 2 Hals., 175; 11 Am. Dec., 556, 548.   No presumption of payment of the mortgage debt can arise while the mortgagee is in possession. If it could arise it would be rebutted by the circumstances of the case. Brobst v. Brock, 10 Wall., 519, 535. If the defendants below had been wrongfully in possession, but holding the rights of Phillip Dimitt under the mortgage, they would have been entitled, under their plea in reconvention, to a decree foreclosing the lien of the mortgage, and directing the land to be sold for the satisfaction of the mortgage debt. Loving v. Milliken, 59 Texas, 423, 427; Morrow v. Morgan, 48 Texas, 304.

10.   The mortgage authorizing possession and the possession in fact would seem to be very full notice of the claim of Dimitt and those holding under him. The description in the mortgage referred to the testimonio which was delivered with it, and this reference made the identification of the land certain.

11.   The probate records referred to were not introduced to show any partition or title to the land, but to show that Dimitt's heirs and those

representing them as administrator, guardian, etc., had openly and for many years claimed that the land belonged to Dimitt's estate.

*John Ireland*, also for appellees.—1. At common law and at civil law it was title and evidence of title. When a mortgage was made, if the mortgagor turned over to the mortgagee his evidence of title, it gave the mortgagee the right to immediate possession. Besides, the mortgage expressly stipulates for Dimitt's immediate possession and right to use the land. It was evidence of Dimitt's rights and those of his vendees. 2 Partida, 866, 867. The civil and common law was the rule of action until the adoption of the Constitution of the Republic in 1836. Dallam, 416; Hannay v. Thompson, 14 Texas, 144.

2. Debt being barred makes no difference. Calhoun v. Lumpkin, 60 Texas, 190; Jones on Mortg., 1205, 674, 675; Hudson v. Wilkinson, 61 Texas, 607; 50 Texas, 397.

3. The mortgage expressly provided for Dimitt's right to the possession, and treating the instrument as a mortgage only, he could not be turned out, neither he nor his vendees, without satisfying the debt. This although the debt was barred. Hannay v. Thompson, 14 Texas, 144; Calhoun v. Lumpkin, 60 Texas, 190; Jones on Mortg., 674, 675, 1205; Hudson v. Wilkinson, 61 Texas, 607; Burgess v. Millican, 50 Texas, 397; Dem v. Wright, 2 Hals., 175.

HOBBY, JUDGE.—Appellants Narcisso, Jesus, Narcisso A., and Trinidad Rodriguez, and Jesus Lafuente in their own behalf, and the last named as next friend for Simon, Delfina, Adela, and Micuela Lafuente, minors, brought this action of tresspass to try title, on the 23d day of March, 1887, to recover the land described in the petition as the league granted to Narcisso Rodriguez, as a colonist of De Leon's colony, on March 25, 1833. The plaintiffs sought a recovery upon the alleged ground that the grantee Rodriguez died owning said land, and that they were his heirs.

There was no controversy as to the fact that Narcisso Rodriguez was the original grantee, his title having issued on March 25, 1833, under the colonization law of March 25, 1825, and there was proof by plaintiffs of heirship.

The defendants pleaded not guilty, the three, five, and ten years statutes of limitation, and set up specially title under a conditional deed or mortgage, an authentic act made by the grantee Narcisso Rodriguez to Phillip Dimitt on the 30th day of September, 1833, in consideration of $5000 advanced to Rodriguez, payable in six years, with 10 per cent interest.

Defendants also set up a title from said Rodriguez to W. E. Jones, administrator of the estate of said Dimitt, made subsequent to the maturity of the conditional deed or mortgage; they pleaded also stale demand.

John Ireland made himself a party defendant, as the warrantor of John V. Haynes. No issue appears to have been made on his plea, and the judgment being for defendants, no further notice was taken of his appearance.

The cause was tried by the court at the November Term, 1887, without a jury, and judgment was rendered that plaintiffs take nothing by their suit, from which this appeal is taken. The errors assigned raise, first, the question of the admissibility of the mortgage introduced in evidence by the defendants, and its validity as a title.

The propositions of appellants in support of their assignment assailing this mortgage may be considered together. They are, that the mortgage was inadmissible on account of unexplained erasures. It was never assigned to defendants, nor was the debt on which it was based. It constituted no evidence of title. It was null and void, because in contravention of the law in force when executed. It was barred by limitation, and was no evidence of notice of defendants' claim.

Such are the objections urged to this instrument, which was an original Spanish mortgage, executed on the 30th day of September by Narcisso Rodriguez, before the officer, with assisting witnesses. It conveyed to Phillip Dimitt, as security for $5000 loaned to Rodriguez by the former, the league of land granted the latter under the colonization law of March 25, 1825, in case of the failure to pay that amount, with 10 per cent interest, within six years, which land it recited possession of had been given Rodriguez under the law, and the "documents of which grant were delivered as a proof of the good faith of the mortgagor." The mortgagee was required to pay the State dues on the grant, and he was authorized to take possession.

Attached to the original which accompanies the transcript in this case, by order of the court below, is a copy which it is agreed was correctly translated by the Spanish translator in the General Land Office. The erasures referred to consist of a blot over what appears to be the character "&" and a "word" or "name" which in the original follows immediately after the name "Felipe Dimitt." The language of the instrument would indicate that "Felipe Dimitt" "&" some other person appeared before the officer with Rodriguez and made the loan to him. They are referred to as the "first named *parties*," who "had made a loan to the *third*" party (Rodriguez) of five thousand dollars. Again, referring to the title issued to Rodriguez as a colonist under the law of March 25, 1825, it recites, "the documents of which grant, as a proof of the good faith which he acts, he herewith delivers, the first named *parties* obliging *themselves* to pay the State dues," etc.

At the foot of the instrument, and having no connection with it, below the signatures of the grantor and the officer, and above those of the assisting witnesses, is the second erasure, consisting also of a blot over

what appears to be two words or names, probably intended for assisting witnesses,. but blotted out.

The general rules are well settled and familiar that on the production of an instrument if it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance. If nothing appears to the contrary, the alteration, it is said, will be presumed to be contemporaneous with the execution of the instrument. "If any ground of suspicion is apparent upon the face of the instrument the law presumes nothing, but leaves the question of the time when, the person by whom, and the intent with which the alteration was made as matters of fact to be found by the jury, upon proofs to be adduced by the party offering it," etc. 1 Greenl. on Ev., sec. 564. These principles are recognized in Park v. Glover, 23 Texas, 472. Although there is not perfect harmony in the cases on the subject, it is generally agreed that as fraud is not presumed, therefore if no peculiar circumstances of suspicion attach to an altered instrument the alteration is presumed to be innocent, or to have been made prior to its execution. 1 Greenl. on Ev., sec. 564, and note 1.

In the case of Park v. Glover, *supra,* plaintiff offered in evidence a bond from James Dixon to John Glover, and a transfer or assignment of the bond by Glover, and a certified copy from the records of the county of the bond and assignment which was written on it. The bond was read. To the reading of the assignment which was written on the bond defendants objected on the ground that it showed on its face that it had been altered. It was as follows:

"For value received I transfer all my right, etc., to the above land to W. A. Park.

"July 16, 1844.                                    JOHN GLOVER."

"Signed and sealed in the presence of us.

"ALBERT MARTIN GLOVER,
"S. C. CROSS."

The words "W. A. Park" and the words "signed and sealed in presence of us" appeared to have been written in black, while the other words were in blue ink. The certified copy from the county records, which was offered along with the original, showed that the alteration was made after the instrument had been recorded.

The facts in the present case are altogether unlike those reported in the case cited. Applying the rule mentioned to the mortgage before us, the presumption would arise that the erasures were made contemporaneously with its execution. The officer's certificate to the original instrument, which was made after the condition was broken, or default in the payment of the loan, strongly supports this view. It was made on February 12, 1840, more than forty years before the trial, and recited that Isidio Venavides, one of the assisting witnesses who participated in the execution of the instrument, appeared before the county clerk of Victo-

ria County and declared under oath that " Rodriguez had executed it," and that he was one of the witnesses. It was recorded in Victoria County on February 25, 1840, and possession and the payment of taxes was shown from that time to the trial, with unimportant intervals.

Conceding the erasures to be as claimed by appellants, the mortgage evidently conveyed Rodriguez's interest to the grantees; and the title having passed out of him his heirs could not recover in this action by virtue of an alleged title in their ancestor which, according to their own theory with respect to the erasures, was probably vested in Dimitt and some other person. It would be in this suit wholly immaterial to Rodriguez's heirs who the joint mortgagee may have been with Dimitt, if any.. Constituting as it would an outstanding title in a third party, it would as effectually prevent a recovery by plaintiffs, whether that party be Dimitt alone or Dimitt and another.

Under the rule that if there had been any ground for suspicion the law would presume nothing, leaving the question of the time, intent, etc., in making the erasure to the jury, the court trying the cause, in admitting the instrument, passed upon the good faith of the alteration or erasure.

The mortgage is dated September 30, 1833. It is argued by appellants, however, that it was executed in February, 1833, and therefore null because in violation of the law prohibiting at that time the alienation of lands acquired under the law of March, 1825, prior to the issuance of final title, final title having as we have seen issued to Rodriguez on March 25, 1833. The recital in the mortgage of the *delivery of the final title itself to the mortgagee* is a sufficient reply to the contention that it was executed before that title was extended.

In answer to the position that if it was executed in September, 1833, the alienation was equally in contravention of the law inhibiting it within less than six years from the issuance of final title, it is only necessary to say that if the mortgage or pledge be such an alienation as was contemplated by the law, it has been held in several cases in this State that although a contract which can not be enforced for the reason assigned by appellants—that is, because it was made in violation of law—the heirs of the grantee can not recover upon their legal title against parties claiming under such contract as heirs without refunding the consideration received by their ancestor. Ledyard v. Brown, 27 Texas, 404. The evidence showed that possession was taken of the land under the mortgage by Dimitt and those holding under him, and such being the case, they could not be dispossessed until the debt was paid; and this right was wholly unaffected by the lapse of time or limitation.

In Hannay v. Thompson, 14 Texas, 144, it was held that where the mortgagee, as in this case, was placed in possession under the mortgage, and by its terms entitled to retain it, the mortgagor could not recover

possession after condition broken without discharging the debt for which it was given. There was no occasion for notice to appellants of defendants' claim to the land, and the objection that the mortgage was no notice of such claim is without merit. The appellants claim as heirs. If notice was essential, the possession authorized by the mortgage, followed by actual continued occupancy of Dimitt's heirs and those claiming under them, was sufficient. To the objections that the land was not described, nor was there any assignment of the mortgage, the answer is, that the authentic act or mortgage made no attempt to describe it. The title itself accompanied it, and was referred to and contained the description. "Where the mortgagee is in possession, his conveyance of the mortgaged property is regarded as passing his interest in the mortgage, although no mention in terms is made of the debt." Thomas on Mort., sec. 808.

The objection to the partition decrees of the Probate courts of Guadalupe and Victoria counties, because not recorded in Jackson County, where the land is situated, were properly overruled. These decrees were made by the Probate courts referred to at different times between the years 1845 and 1850, and during the administration of the estate of Phillip Dimitt; and they show a distribution and division of the land among his heirs, and that it was inventoried by his administrator, W. E. Jones, who was also guardian of some of the heirs, as the property of the estate, and that it was managed and controlled by him as such administrator. They were not offered as showing in themselves title to the land under which the defendants claim, but as indicating acts of ownership under the title from Rodriguez. The statute (art. 4339, Rev. Stats.) requiring substantially that when such decrees are offered as *evidence of title* they must have been recorded in the county where the land is, has no application to decrees offered as these were.

It is assigned as error that the witness Texas Dimitt testified, "That the undisputed fact is that said land has been and is the property of said Dimitt for the past 45 or 46 years," and that this evidence should have been excluded. If it was error it would furnish no ground for reversal, as the cause was tried by the court and the evidence, excluding this, was so full and satisfactory upon the issue of the ownership of and claim to the land by Dimitt and those claiming under him for that length of time, that no other decree could have been entered by the court than was rendered. The expression objected to was preceded by a lengthy statement of this witness showing possession, acts of control and ownership over the land by the Dimitt heirs for many years, and that he, although 48 years old at the time of trial, had never heard of any claim asserted adversely until a short time before suit was brought. This testimony was substantially the same as other witnesses testifying upon this issue.

We have replied to the most important assignments, and the others we

think do not require discussion, as none require, in our opinion, a reversal of the judgment.

The facts in this case are substantially that the original grantee Rodriguez after the Texas revolution went to Mexico, and there resided until about 1842 or 1843. It appears from the testimony of Colonel Seguin, who was intimate with him, that he told him he owned no land in Texas. His widow returned to San Antonio, and died there just after "the rebellion." The heirs, with the exception of one perhaps, have all lived in Texas—in San Antonio, Austin, Ellis, and Grimes counties. None of them rendered the land for taxes or claimed it until a short time before this suit.

Judge White, who resided in Victoria County since 1831, had never heard of any claim adverse to Dimitt's title. He was agent for Ireland, who purchased from Dimitt's heirs, and the only defect in his title was that some of the deeds were not recorded in Jackson County. Ireland took possession by tenant in 1880, and actual possession was taken by the defendants, who have held it up to the trial. Ireland purchased in 1870.

Texas P. Dimitt, who was 48 years old in September, 1887, testified that as far back as he could remember the Dimitts owned, controlled, and claimed the league. He, as agent for the other Dimitt heirs, was in possession from 1866 to 1870. It was controlled by W. E. Jones, Dimitt's administrator and the guardian of his children, as shown by the probate records referred to, and claimed it as belonging to the Dimitt estate from about 1845 to 1850. It was in possession of J. H. Wood for Dimitt, who placed Wood in possession, and so held by him from 1841 to 1845; Terrell purchased Wood's improvements and took possession of it as the property of the Dimitt heirs. The Comptroller's statement shows the payment of taxes on the land from 1846 by Dimitt and those claiming under him, with the exception of about six years.

The original mortgage, as stated, was recorded in 1840, and authorized the mortgagee, Dimitt, to take possession. In addition to these facts the evidence showed that a title had been executed by Narcisso Rodriguez to W. E. Jones, the administrator of Dimitt's estate, which was in the handwriting A. H. Phillips. This deed was last seen in the hands of A. H. Phillips. Among the papers of the estate of Dimitt found in possession of the administrator's (W. E. Jones') son was a package, upon which was endorsed by J. J. Thornton, the attorney for the estate, the following: "See A. H. Phillips and get deed of Rodriguez, left by Jones."

These facts we think authorized the finding of the court, which was in substance that such a title had existed. The proper judgment was rendered by the court in this case, and a further consideration of the assignments would be useless.

The judgment should be affirmed.

*Affirmed.*

Adopted February 4, 1890.