KANSAS MUTUAL LIFE INSURANCE COMPANY v. MRS. J. E. COALSON.

Decided October 26, 1899.

1. Pleading—Written Instrument—Alteration—Verification.

A plea admitting the execution, but setting up a material alteration, of a written instrument, is not a plea of non est factum, and is not required by the statute to be verified.

2. Same—Rejected as Evidence Without Pleading.

It was not necessary that the alteration of an application for life insurance, retained by the company, should be affirmatively pleaded, where it furnished evidence on its face that it had been materially altered after its delivery; nor was it error to exclude it as evidence until the company explained the alteration so as to show it was not nullified thereby.

3. Alteration of Written Instrument—Presumption—Evidence.

Although alterations of a material character may be apparent upon the face of an instrument offered as evidence, yet if nothing appears to the contrary, the presumption obtains that such alterations were authorized, or were made at or before delivery.

4. Same—Life Insurance Contract Severable

An insurance company may, by a culpable alteration of an application for a policy of insurance, lose its defenses preserved therein, without affecting the part of the

transaction made for the benefit of the insured, although the application is by the terms of the policy made a part thereof,—the contract being to that extent severable.

**5. Same—Same—Warranties in Application Broken.**

A judgment against an insurance company upon a life policy will be reversed where the jury find specially that warranties· in the application for the policy have been broken, and that the application, while in the company's possession after its delivery, has been materially altered, if the evidence is insufficient to support the latter finding.

**6. Life Insurance—Warranties in Application.**

Where the answers given in an application for an insurance policy are by its terms made warranties, the question of their materiality can not be made an issue.

**7. Same—Breach of Warranty Not Shown—Pleading Requisite. ·**

Where, in his application for a life policy, the insured stated that he held another policy in the "Mutual Reserve" company, proof that he had a policy in the "Mutual Reserve Fund Life Association," void because of failure to pay the premium thereon, did not suffice to show a breach of warranty as to that statement without averment in the pleadings that the latter company was the same as the one named in the application.

**8. Same—Issuance Is Not Delivery.**

Where an application for a life insurance policy stated that the applicant had never applied for insurance "which had not been issued," a breach of warranty of the truth of the statement is not shown by proof that the applicant had applied for other insurance and a policy had been written out and sent to that company's agent, but, because of some disagreement as to commissions between the company and the agent, had never been delivered. ·

APPEAL from Harris. Tried below before Hon. JOHN G. TOD.

*Maurice E. Locke* and *Robert T. Herrick,* for appellants.

*Hutcheson, Campbell & Myer,* for appellee.

GILL, ASSOCIATE JUSTICE.—Mrs. J. Coalson, the appellee, brought this suit against appellant, a life insurance company, to recover upon two insurance policies, the risks having been written by appellant upon the life of her husband, Paul Coalson, who died in February, 1898. The policies were for $5000 each, and appellee, the wife, was named as beneficiary in each. The policies were numbered 16173 and 17030, respectively, and for convenience will be hereafter referred to by number, without other designation.

The defendant company answered admitting the execution of the policies as alleged, and conceding plaintiff's cause of action, except in so far as it might be defeated in whole or in part by defensive matter set up in the answer, thus securing the right to open and conclude. Such defensive matter as pleaded consisted: ·

1. Of an allegation that deceased came to his death by suicide.

2. That in the application for policy No. 16173 deceased answered among other things, that his occupation was that of a physician, which was untrue.

3. He answered that in an attack of la grippe suffered by deceased he did not employ a physician, which was false.

4. He answered that he had made no previous application for life insurance upon which a policy had not issued, which was averred to be false.

5. That by the term of the policy itself the application and medical examiner's report were made a part of the contract, and that each and every answer was expressly warranted to be true, their truth being made a condition precedent to liability, so that a breach of any one without reference to its materiality would be a complete bar to recovery.

To policy No. 17030 appellant made like answer, setting up suicide and two breaches of warranty, namely:

1. That deceased answered in his application that he had upon his life an insurance policy for $2000 in the "Mutual Reserve Fund Life Association," and that such answer was false, such policy having lost its validity at the date of the application, by reason of nonpayment of premium.

2. He answered that he had theretofore made no application for life insurance upon which a policy had not issued, which was false.

As to this policy also it was averred that the application was by the terms of the policy itself made a part of the contract and the answers were warranted to be true.   Both policies contained the "suicide clause."

Other answers in each application were pleaded and alleged to be false, but were found by the jury to be true, and such only are set out here as we consider necessary to notice specifically in the disposition of this appeal.

To these defenses plaintiff replied by general denial, and further averred that such answers were merely representations, of a nature not material to the risk, and further, that if false, their falsity was known to Fred W. Fox, the company's agent, through whom the application was made and forwarded, and to Dr. Daniels, the company's medical examiner, who examined deceased for both policies of insurance.

Upon the trial the application for policy No. 17030 was admitted in evidence without objection.   The character and effect of the evidence offered thereunder and the verdict thereon will be discussed further on in this opinion.

When appellant offered the application for policy No. 16173, appellee admitted that it was signed with the genuine signature of deceased, but objected to its admission on the ground that it bore evidence upon its face of having been altered in material respects.   The objection was sustained by the trial court, after an inspection of the document, and proof was heard in explanation.   Thereupon the paper, together with the evidence bearing upon its integrity, were sent to the jury.   The case was submitted to the jury upon special issues.   Judgment was rendered upon verdict in favor of appellee for the amount of both policies, for 10 per cent attorney's fees, and a 12 per cent penalty under the statute.   This appeal was perfected and the case is before us upon assignments of error, which we hold are sufficient to require the notice of this court.   Many objections are urged to the brief and assignments of appel-

lant. While it is clear that in some respects they are not prepared in strict accord with the rules, we think the matters of which appellant complains are fairly before the court.

Inasmuch as appellant's sixth assignment of error relates to each of the policies sued on, urging as it does the defense of suicide, it will be considered first. In view of the disposition of this appeal, in part at least, we refrain from entering into a review of the evidence touching this issue. We have carefully considered all the evidence bearing upon the question, and are of the opinion that this court ought not to disturb the finding of the jury, that deceased came to his death from natural causes.

Appellant's first, second, and third assignments of error assail the action of the trial court in refusing to permit the application for policy No. 16173 to go unchallenged to the jury (they having found it materially altered and that appellant was responsible for it), because defendant's answer was based in part thereon, and averred its execution by Paul Coalson, and there was no pleading on the part of plaintiff, either verified or otherwise, questioning the validity of the application. Under these assignments it is assisted that, while it is true the instrument is not charged in terms to have been executed by appellee or her authority, it nevertheless comes within the provision of Revised Statutes, article 1265, section 8, requiring the verification of certain pleas.

The contention is also made that, without reference to the application of the statute cited, it was clearly the duty of appellee, by some affirmative plea, to set up the nature and extent of the alleged alteration, and this not having been done, the action of the court in permitting it to be challenged in any respect is assailed as error.

Since a plea admitting the execution but setting up a material alteration of a written instrument is, in our opinion, not a plea of non est factum, and not such a plea as our statute requires to be verified (Heath v. State, 14 Texas Criminal Appeals, 213; Dewees v. Bluntzer, 70 Texas, 406; Ruez v. Campbell, 6 Texas Civil Appeals, 714), we do not deem it necessary to decide whether the beneficiary in an insurance policy bears such a relation to the deceased applicant as to come within the provision in article 1265, section 8, of the Revised Statutes.

The question of greater difficulty is whether an instrument such as the one in question can be attacked on the ground of alteration, in the absence of pleading raising the question. Were it not insisted that the alteration is apparent upon the face of the instrument, we would not hesitate to hold that the question must be raised by a plea on the part of the person asserting alteration, and that the burden of proof to show alteration would devolve upon the party asserting it. Wells v. Moore, 15 Texas, 521; Irvin v. Garner, 50 Texas, 48; Muckleroy v. Bethany, 27 Texas, 551.

In this case, however, the court below acted upon the assumption that the instrument not only bore upon its face marks of alteration, but that of itself it furnished evidence that such alterations were unauthor-

ized and made after delivery. The trial court must have so held, for the rule seems to be, that though alterations of a material character should be apparent upon the face of the instrument offered, yet if nothing appears to the contrary, the presumption obtains that such alterations were authorized, or were made at or before delivery. Rodriguez v. Haynes, 76 Texas, 225.

If, then, the court was correct, no plea on the part of appellee was necessary, for not only is the party offering such instrument supposed to be prepared with proof to account for the alteration which, if apparent to others, must also be apparent to him; but in the absence of such explanation the document itself impeaches its own validity and is excluded, not because of any issue made by the pleadings, but because by reason of its infirmity it is sufficient to raise an issue in the evidence which would authorize its submission to the jury. A general denial would require its production (Matossy v. Frosh, 9 Texas, 610, also Rodriguez v. Haynes, 76 Texas, 225), and if, in compliance with this requirement, an instrument is offered which of itself clearly shows it is not the genuine instrument pleaded, it is properly excluded until evidence is offered tending to explain the apparent alteration and rebut the presumption thus raised. Machine Co. v. Peterson, 33 Pac. Rep., 470.

Justice Robertson, in Pasture Company v. Preston, 65 Texas, 448, uses the language, "In making the proof upon which such paper gets to the jury, the party offering it proceeds ex parte. If, without considering any other evidence than that produced by him, there is enough to raise an issue of fact upon the genuineness of the document, it is proper for the court to allow the paper to go before the jury, and the issue of fact is then determined by them after hearing all the testimony on both sides"—citing Williams v. Conger, 49 Texas, 594, and Gainer v. Cotton, Id., 118; 1 Greenl. Ev., sec. 21. Continuing, he says: "The preliminary proof before the judge is merely an earnest of the issue. What shall be sufficient for this purpose can not probably be embraced in any definition which would suit the peculiar facts of every case. It would always be proper to admit the paper when the proof is sufficient (none opposing being offered) to sustain a verdict of genuineness."

It appears to be true, as contended by appellant, that the general practice in this State seems to be to interpose a plea where alteration is relied on as a defense, but the custom seems to have been equally general to verify such plea as in case of non est factum.

This doubtless accounts for the absence of authority in this State adjudicating the exact question, and is at least persuasive that to set up the alteration by plea is not only the better practice, but in accord with the spirit of our laws governing pleading generally, as well as attacks upon the validity of written instruments. A case may arise, as is contended by appellee has arisen in this instance, where the document has remained in the custody of appellant since its execution. The maker is dead. No person friendly in interest to appellee who ever saw the instrument when first made is living. Appellant, as insisted in its

brief, rightfully denies the request for inspection of the original application, and does not attach it to its answer. Appellee was not a party to it and never saw it, and therefore has no means of knowing what it originally contained. When offered in evidence she discovers on the face of the instrument suspicious marks showing material alteration. In such case, is not the ancient rule that "the party offering must explain" more just and more practicable than to require the appellee to withdraw her announcement for the purpose of amending her pleadings, and denying her the right to avoid the consequences of a wrong so patent that the court must hold, without proof from appellee, that the instrument has been altered to her detriment? The issue is one of fact in such a case, and it is not unusual for distinct issues of fact to arise, in the course of a trial, which were never directly made by the pleadings. The litigant must be prepared with his proof to meet such issues of fact as he might reasonably foresee from the nature of the case, nor would a withdrawal of announcement be permitted and continuance be granted except upon a showing that an issue had arisen of which the nature of the case gave no intimation, and which could not have been foreseen. Can it be said that the holder of an instrument bearing patent marks of unauthorized and material alteration could not reasonably foresee that its genuineness would be questioned? We hold, therefore, that the court did not err in permitting the attack upon the instrument in the absence of a plea affirmatively asserting its alteration.

It is contended, however, that, conceding the alteration in the respects urged, the appellee was held to elect one of three courses: (1) To stand upon the application as altered; (2) to prove its original contents; or (3), to avoid the entire contract, the effect of which, in any event, in a contract like the one before us, would be to defeat appellee's right to recover on the policy in question, thus permitting the party charged with making the alteration to escape the penalty of his act, and as to two of the three courses laid down, the guilty party would, under the peculiar facts of this case, actually benefit by his unlawful act. If the entire contract is avoided, the appellee loses her insurance. If the alteration is ratified and enforced as it stands, one of the warranties contained in the part charged to have been altered is perhaps shown to be breached, and appellee loses her insurance. If its original form is established and enforced, the fact remains that other breaches have been shown, and appellee recovers nothing.

This contention has its basis in the idea that because the policy of insurance recites that the entire application is a part of the contract of insurance, it may not be severed from it for any purpose. This may be true in one sense. But the application contains not a single promise or agreement save that making the answers warranties. It consists of mere answers to questions which are supposed to relate to matters material for the company to know prior to its entry into the contract of insurance. The questions and answers relate to events and conditions past and present, the truth of which the applicant warrants. The paper

is separate and distinct from the policy, not only in fact, but in its nature, containing, as it does, matter which can never be used for any purpose save to defeat the actual contract of insurance. It is mere representation inducing the contract subsequently made, and contains no agreement save that the statements shall be warranties. In suits upon a written contract its nature and terms must be set out in the pleading, and it must be produced in evidence in support of the allegations, or its loss accounted for and its contents made to appear. Yet in suits upon insurance policies the plaintiff has never been required either to set out or produce the application, notwithstanding it is mentioned in the policy as a part of the contract, and the absence of a part of the contract, in one sense, is thus disclosed.

The three alternatives are clearly laid down by Mr. Bishop in his work on Contracts, and are doubtless the logic of a situation properly invoking such a rule. Bish. Cont., sec. 748. But in the case before us it seems too clear for argument that an insurance company may, by a culpable alteration of the application, lose its defenses preserved therein, without affecting the part of the transaction made for the benefit of plaintiff. To this extent at least a contract of this character is severable.

This being true, if the jury were correct in their finding that the policy had undergone a material and unauthorized alteration at the hands of or through the negligence of appellant, then the fact that other breaches were proved becomes immaterial, and the judgment as to that policy should be permitted to stand. However, after a careful examination of the entire testimony bearing upon the question of alteration, we are of the opinion that the verdict upon that issue is unsupported by the evidence, and the jury having found also that at least two of the warranties had been breached, the lower court erred in refusing to grant appellant a new trial. It follows, therefore, that as to this policy the judgment should be revised and the cause remanded. These questions effecting this particular policy have been thus fully discussed and decided in view of the necessity of another trial. In this connection we add, that the answers given in the application were warranties and not mere representations, and the question of their materiality may not be considered. Fitzmaurice v. Insurance Co., 84 Texas, 61; Insurance Co. v. Hazlewood, 75 Texas, 338; Insurance Co. v. Fletcher, 117 U. S., 519.

As to the finding of the jury that the agents of the company had knowledge of the falsity of some of the answers complained of, we have no doubt but that the judgment of the trial court was uninfluenced thereby, and assume that an erroneous assumption that such knowledge, under the pleadings and facts in this record, would be binding upon appellant, will not be indulged on another trial.

The defense of suicide having been disposed of, the only remaining grounds upon which the correctness of the judgment as to policy 17030 is assailed are: (1) Breach of warranty concerning existing insurance; (2) breach of warranty that no application had been previously made upon which a policy had not issued; (3) the judgment for 10 per cent

attorney's fee and 12 per cent penalty, and the validity of the law authorizing such judgment.

As to the warranty concerning existing insurance, the facts are that to the following question in the application, namely, "Have you any insurance on your life? Note. If yes, see that each blank is properly filled," the answer was "Yes."

| "In what Co., etc. | When taken. Mo. Yr. | Kind of policy. | Amount. |
|---|---|---|---|
| Mutual Reserve. | Jan. 1897. | ———— | 2,000 |
| Kan. Mut. | Jan. 1897. | 10 Y. R. T | 5,000" |

The blanks were filled by the applicant as thus shown.

Appellant, in pleading this answer as a breach of warranty, averred that applicant answered that he had a policy in the "Mutual Reserve Fund Life Association" in force at the date of the application, and that the answer was false, "that he thereby warranted that he had upon his life the policy so described, when in fact he had at that time no policy in said association."

Upon the trial, in support of the alleged falsity of the answer to this question, appellant offered evidence over the objection of appellee that applicant had not·in force upon his life at that date a policy for $2000 in the "Mutual Reserve Fund Life Association." The nature of appellee's objection was that no such warranty had been made.

By deposition, an officer of the "Mutual Reserve Fund Life Association" testified that upon the application of Paul Coalson, dated January, 1897, a policy for $2000, dated January 22, 1897, had issued, but that the company had never received a cent of the premium, and that the policy was invalid by reason thereof at the date of the application in question. No other policy had ever issued to applicant by the said association. The $2000 policy appears to have been delivered upon payment of $16 to the soliciting agent, and that by its terms $38.76 were due in thirty days from its date, and $6 within sixty days after its date. The policy further provided that each premium was payable at the home office in New York, "but may be accepted elsewhere by a duly authorized local treasurer in exchange for the association's official receipt signed by the president, etc., and no premiums shall be considered paid unless such receipt shall be given, which receipt is the sole evidence, etc. If any premium shall not be paid when due, the policy shall expire and terminate." The policy spoken of in this deposition was found among the papers of the deceased, and at the date of his application for insurance in appellant's company, had not been declared forfeited by the association, nor did the association ever officially declare its termination.

Appellee offered no proof except the original policy for $2000, and the fact that it had been delivered to the applicant and remained in his possession. The jury found that in September, 1897, applicant had such policy in force upon his life.

Appellee seeks to meet this assignment, first, by the assertion that, as it was not pleaded that by "Mutual Reserve," applicant meant "Mu-

tual Reserve Fund Life Association," it could not be proved over objection; second, that no such proof was made; and third, that it is true as found by the jury that applicant had a $2000 policy in the association named in the policy.

In the decisions in this State wherein the enforcement of such warranties is allowed, it is said that while the doctrine of warranty will be strictly applied, it should be as strictly limited to the precise undertaking of the party making it. Insurance Co. v. Hazlewood, 75 Texas, 338.

By the enforcement of the letter of the warranty, whether the answer be material to the risk or not, a harsh rule is invoked, and while the warranty will be held to bind the applicant to the letter of his undertaking, neither presumptions, nor the apparent spirit of the undertaking will authorize an extension of its meaning beyond its clear import. The rule is applicable in each direction. The apparent purpose of the various questions in the application is to put the company in possession of such facts as should properly influence it in assuming the proposed risk. Yet it is insisted by appellant, and correctly too, that though the breach be beneficial instead of a detriment to the company, the policy is nevertheless avoided. So since the "pound of flesh" is demanded, it is awarded, but not an atom more.

Immaterial warranties are enforced by the courts with reluctance, and at least one of the States, Pennslyvania, has by act of the Legislature relaxed the vigor of the common law rule.

The reply in question, if intending to name the "Mutual Reserve Fund Life Association," which is probable, might have been naturally and honestly made by a lay mind, since the policy was in possession, and the issuing company had done no act to indicate its forfeiture. Nor is it clear that the jury were not authorized to find as they did, under the meager proof at hand, and with the burden upon appellant to clearly establish the contrary. It is also true that the company, if dissatisfied with the vagueness of the answer, could have demanded a fuller one. Had appellee proved that a $2000 policy was in force on the date in question in a company known as the "Mutual Reserve," such proof would have fully met the warranty, and it would have availed appellant nothing to say he had no such policy in the "Mutual Reserve Fund Life Association."

There being neither allegation nor proof that the answer meant other than the name actually given, it follows that the finding of the jury on this issue is immaterial, and no breach being shown of this answer, the validity of the policy is not affected.

As to the second breach complained of as affecting policy 17030, the facts are substantially as follows: In answer to question 8 in the application the applicant stated that he had applied for no insurance for which a policy had not issued. Coalson had in fact applied to the Covenant Mutual Company for $10,000 on his life. The company declined to issue for the full amount, but wrote him for $5000. On account of an indebtedness due by their soliciting agent to the company,

this policy was not sent to him for delivery, but was sent to their medical examiner for delivery upon payment of the first premium. The agent induced Coalson to refuse payment unless the agent was permitted to make the delivery, and this being refused, the policy was eventually returned to the company. The jury found that a policy had issued upon the application, but was never delivered.

Without entering into a discussion of the distinctions sought to be drawn by counsel as to the technical meaning of the word "issue" and its meaning as ordinarily used, we will dispose of that question by saying it is undoubtedly used both by the laity and the profession as not including within its meaning a technical "delivery," and the court was correct in holding that the facts proved did not constitute a breach of the warranty.

The question of the constitutionality of the act permitting the recovery of attorney's fees and a penalty of 12 per cent in cases of this nature is not an open one in this State, and this court is bound by the decisions as they stand. Insurance Co. v. Chowning, 86 Texas, 654; Insurance Co. v. Waldon, 26 S. W. Rep., 1012.

The judgment of the lower court upon policy 16173 is reversed and the cause remanded. As to policy No. 17030, it is in all things affirmed.

*Affirmed in part.*

*Reversed and remanded in part.*

Writ of error refused.