### CROW et al. v. WILLARD et al.
#### No. 4796.

Court of Civil Appeals of Texas. Amarillo.
Oct. 4, 1937.

162

Walter F. Schenck, of Lubbock, for appellants.

Terry, Cavin & Mills, of Galveston, and Wilson & Randal, of Lubbock, for appellees.

STOKES, Justice.

On the 1st day of December, 1923, appellee Nelson W. Willard sold and conveyed to Mrs. R. E. Whitaker 160 acres of land in Terry county for which she paid him a small amount in cash and executed seven vendor's lien notes in the sum of $338 each, due and payable on December 1st of the years 1924 to 1930, inclusive, bearing interest at the rate of 6 per cent. per annum, payable annually. To secure the payment of the notes a vendor's lien was retained in the deed, and, as additional security, Mrs. Whitaker, joined by her husband, J. T. Whitaker, executed to W. A. SoRelle, as trustee, a deed of trust on the land, in which they agreed to pay the taxes and interest due the state on the original purchase money each year as they accrued, and further agreed that, if they failed to pay these items, the grantor in the deed should have the right to pay them and any amount so paid by him should be secured by the deed of trust lien.

On the 28th of January, 1924, Mrs. Whitaker and her husband, by deed of that date, conveyed the land to H. B. McBride, who, as part of the consideration, assumed the seven vendor's lien notes that had been executed by Mrs. Whitaker to appellant, and also assumed the balance of the purchase money due the state of Texas.

On the 22d of January, 1926, H. B. McBride and his wife conveyed the land to

appellant W. M. Crow for a consideration of $1,280 cash, and the assumption of the seven notes executed by Mrs. Whitaker above described, and also the assumption of the balance of the original purchase money due the state of Texas.

On the 20th of January, 1926, W. M. Crow executed and acknowledged an extension agreement in which the vendor's lien notes were described, and in which it was stated that the appellee Nelson W. Willard had agreed to extend the past-due notes. The instrument then proceeds to extend the payment of the first and second notes so that they would become due December 1, 1931, and December 1, 1932, instead of the original maturity dates of December 1st of the years 1924 and 1925. The instrument also recites that the vendor's lien, as well as the deed of trust lien, given to secure the payment of the notes, were likewise extended, and provided that those liens should remain in full force and effect until all of the notes held by Willard, together with all interest thereon, were paid.

On the 30th of November, 1927, Crow, not having been able to pay any of the notes, executed another extension agreement with reference to the third and fourth notes of the series which provided that they should fall due on the 1st of December of the years 1933 and 1934 instead of the years 1926 and 1927, their original dates of maturity.

This suit was filed by appellee, Nelson W. Willard, on the 16th of April, 1936, the petition setting out in detail the various mutations and instruments above mentioned. The petition named as defendants R. E. Whitaker and her husband, J. T. Whitaker, H. B. McBride, W. M. Crow, Walter F. Schenck, and E. H. Thomas. The record shows that Schenck disclaimed and was dismissed from the suit, and that A. C. Crow was a a tenant on the land at the time the suit was filed. All of the defendants except Schenck, who disclaimed, and W. M. Crow, A. C. Crow, and E. H. Thomas, made default, but the three last-named defendants filed an answer consisting of various exceptions and pleas, setting up the statute of limitations and attacking as void the extension agreements. Their contention with reference to these defenses will be revealed in our comments thereon in the opinion.

On the 18th of September, 1936, the court rendered judgment, overruling the various pleas of limitation and exceptions to the extension agreements, rendered judgment against appellant W. M. Crow upon all of the notes except note No. 5, and for $161.47, which represented the amount that had been paid by appellee as taxes and interest on the balance of the orginal purchase money due the state, and foreclosed the vendor's lien and deed of trust lien against all of the defendants. Appellants W. M. Crow, A. C. Crow, and E. H. Thomas, excepted to the judgment, gave notice of appeal, and have perfected an appeal to this court.

■ The case is presented on numerous assignments of error, but, in the interest of brevity, we shall not discuss them separately, deeming it sufficient to group them into five propositions, the first of which is that the notes were barred by limitation at the time the suit was filed on April 16, 1936, because the Legislature, as to this transaction, was without power to enact article 5520 as amended by the Acts of 1931, c. 136, §2 (Vernon's Ann. Civ.St. art. 5520), and thereby change the provisions of the former law with reference to the period of limitation applicable to a series of notes such as constitute the subject of this suit. The basis of this contention is that the notes having been executed in 1923, the rights of the parties were fixed by the law of limitation existing at that time, and the Legislature was without authority to make any change in the law applicable to this transaction and provide a different period of limitation. In the view we take of the case, none of the notes was barred by limitation on the date the act was passed. If they were not barred at that time, the Legislature had the power to change the period of limitation and provide another and different one from that which prevailed at the time the contract was made. In the case of Cathey v. Weaver, 111 Tex. 515, 242 S.W. 447, 453, the Supreme Court, speaking through Chief Justice Cureton, stated the law as follows: "The rule is that, while as to all causes of action not actually barred the Legislature may extend the period of limitation, yet, if rights have once become vested and perfect, the Legislature is without power to remedy or lengthen the limitation period."

A large number of cases are cited under this holding and it cannot be questioned as the law in Texas today. The vested rights mentioned in the above excerpt no doubt refer to those rights which accrue to an

obligor when limitation accrues. See, also, Hutton v. Harwell (Tex.Civ.App.) 95 S.W. 2d 467.

If none of the notes was barred by limitation at the time the suit was filed, the rights of the parties were governed by article 5520, Revised Civil Statutes, and it is not necessary to go into detail concerning a condition which would exist if appellant is correct in his contention that his rights are governed by the law in existence at the time the contract was made. We will say, however, that even admitting that his rights were so governed, they would come under article 5694, Vernon's Sayles' Ann.Civ.St.1914, which gives ample authority for the extensions entered into and contains practically the same provision with reference to the maturity date of the notes as was brought forward in article 5520 when it was enacted in 1931. The question then arises: Were any of the notes barred by limitation at the time the Legislature enacted article 5520 and at the time this suit was filed? The article provides that, where a series of notes may be given, as in this case, limitation shall not begin to run until the maturity date of the last note. It is further provided that, upon the expiration of four years after the date of maturity of the last note, payment shall be conclusively presumed to have been made of each of the notes and the lien for their security shall cease to exist. Then follows the provision for the extension by an agreement in writing by the party or parties primarily liable for the payment of the indebtedness. The parties to this suit availed themselves of the privilege given by this and the former article as to a portion of the series of notes. Obviously, the reason the entire series was not dealt with in these extension agreements was that the last three, being Nos. 5, 6, and 7, were not due and no change in their terms or maturity dates was necessary. As the series of notes was originally executed, the first note was due one year after date, the second two years after date, and so on, No. 7 being due seven years after date, which was December 1, 1930. That was the status of the series of notes when they were executed. Appellant Crow afterwards became liable and bound to pay the notes and, by an instrument of equal dignity with the deed in which they had been created, he changed the maturity dates of the series so that note No. 5 was the first

note of the series to become due, and note No. 4 was the last, it being provided that No. 4 should become due on the 1st of December, 1934. If the series of notes had been executed by Whitaker to fall due at the times and in the manner provided in the extension agreements, there can be no question that the last note of the series would have fallen due December 1, 1934, which was less than two years prior to the time this suit was filed. The notes as rearranged by the extension contracts were no less a series of notes than they were prior to that time. As rearranged by the extension agreements, the last of the series, to wit, note No. 4, became due and payable on the 1st of December, 1934, and none of the series became barred by limitations until four years after that date. When this suit was filed, therefore, all of the notes were in good standing for the simple reason that under the law limitation did not accrue against any of them until four years after December 1, 1934.

We, therefore, do not agree with appellant in his contention that the notes or any one of them was barred by limitation when the suit was filed, and all of his assignments relating to limitations in reference to the vendor's lien notes are overruled.

Appellant strenuously contends that note No. 5 was barred by limitation, and it seems the trial court took his view of the law in respect to that note, since he so found in the findings of fact and denied a recovery thereon in the judgment. This note matured on December 1, 1928, and was not the subject of any renewal or extension contract. We presume the trial court concluded it was barred by limitation for the reason that it had not specifically been renewed or extended and it matured more than four years prior to the enactment in 1931 of amended article 5520. It is our opinion that note No. 5 became the first note of the series when the first four were extended and set over to the latter end of the new period covered by the series of notes. As stated above, the notes were no less a series of notes after the extension contracts had been executed than they theretofore had been, and limitation, therefore, did not begin to run on note No. 5 until the maturity date of note No. 4, which was, by the provisions of the extension contracts, made the last note of the series, and became due December 1, 1934. Citizens' Nat. Bank of Hillsboro v.

Graham (Tex.Com.App.) 275 S.W. 997; Karczmarzyk v. Kerr (Tex.Civ.App.) 3 S. W.2d 928; Hutton v. Harwell (Tex.Civ. App.) 95 S.W.2d 467; Durham v. Foust (Tex.Civ.App.) 64 S.W.2d 1027.

██ The next contention made by appellant is that the extension contracts were void because a subsequent purchaser of land is without authority to extend a note or a series of obligations, the contention being that, in order to be valid and legal, such extension contract must be executed by the original maker of the notes. We overrule this contention. It has many times been held that the vendee of real estate who assumes outstanding obligations, secured by liens thereon, becomes the person primarily liable on such obligations, the maker taking the place of a surety and his obligation being a secondary one. Spencer & Co. v. Texas P. C. & O. Co. (Tex.Civ.App.) 91 S.W.2d 411; Hoeldtke v. Horstman, 61 Tex.Civ.App. 148, 128 S.W. 642; Chapman v. Crichet, 127 Tex. 590, 95 S.W.2d 360, 96 S.W.2d 64, and authorities there cited. Article 5520 designates as the proper person to make the extension agreement the "party or parties primarily liable for the payment of the indebtedness."

██ Appellant's next contention is that the trial court erred in rendering judgment against appellant and foreclosing the deed of trust lien for the $161.47 that had been paid by appellee as taxes and interest on the original purchase money due the state, because these items were no part or parcel of the series of vendor's lien notes, and further because appellant Crow had not specifically assumed the agreement in the deed of trust with reference to these items when he purchased the land. The deed of trust executed by Mrs. Whitaker when she purchased the land from appellee provided that she would pay the taxes and interest due the state as they became due, and that, if she failed so to do, appellee should have the right to pay them, and any amount so paid by him should be secured by the deed of trust. The deed of trust also secured the series of vendor's lien notes. When appellant Crow purchased the land he did not specifically assume the deed of trust, but, in the extension contracts afterwards executed by him, the deed of trust was specifically mentioned and extended along with the vendor's lien. We think these

provisions in the extension agreements are sufficient to show that it was intended by all the parties that, when Crow purchased the land and assumed the vendor's lien notes, he likewise assumed the obligations of the deed of trust. There can be no doubt that the recitals in the extension contracts pertaining to the deed of trust had the effect of merging the deed of trust into the entire written contract which evidenced the transaction containing the obligations assumed by appellant. These included the agreement to pay the taxes and state interest as they became due, and the further agreement that, in case of default in that respect, appellee should have the right to pay them and any amount so paid by him should be secured by the deed of trust. Under these conditions the statute of four years' limitation would apply, and the payments made on these items by appellee would become barred four years after they were made. The first and second payments were made on January 30th, and February 5, 1932, which was more than four years before the suit was filed. The remaining four payments were made on October 31, 1934, January 31, 1935, October 24, 1935, and January 31, 1936. These were clearly within the four-year period prior to the date the suit was filed and were not barred by the four-year statute of limitation. We, therefore, sustain appellant's contention in this respect as to the first two payments.

██ In his petition, appellee alleged that the notes sued upon were payable to Nelson W. Willard. The notes introduced in evidence by him upon the trial were drawn upon a printed form in which the name of Thomas C. Spearman was printed as the payee. Photostatic copies of the notes are brought forward in the statement of facts, and the first six plainly show the name "Thomas C. Spearman" to have been blotted out and the name "Nelson W. Willard" written immediately above it. The last note of the series contains no attempted change in the name of the payee nor any erasure of the name "Thomas C. Spearman," but shows upon its face to be payable to him. Appellant objected to the introduction of these notes, and, his objection being overruled, he assigns as error the action of the court in permitting their introduction in evidence without explanation of the apparent alteration. We sustain this assignment. The alteration or change in the name of the payee clearly

appears upon the face of the notes, and the rule is that, while the alteration need not be set out by plaintiff in his petition, yet, when the instrument is introduced in evidence and objected to, it becomes his duty to explain the apparent alteration. The better practice is for the petition to set out the apparent alteration and explain it, but, where that is not done, it becomes the duty of the plaintiff to furnish a satisfactory explanation of it, and, if he fails to do so, the objection to its introduction should be sustained. Under the general rule of pleading it would seem that, in such cases, the duty would rest upon the defendant to plead the alteration of the instrument, but the general rule of pleading is not followed in such situations because of the hardship and injustice that may be imposed upon a defendant who may not know of the alteration or suspicious circumstances of alterations or changes made in such instruments until they are offered in evidence upon the trial. It would manifestly be unjust to require him at that stage of the proceeding to plead and perhaps furnish proof which may be available, but not then convenient, relative to the facts surrounding the matter. Rodriguez v. Haynes, 76 Tex. 225, 13 S.W. 296; Kansas Mut. Life Ins. Co. v. Coalson, 22 Tex.Civ. App. 64, 54 S.W. 388; Hess v. Schaffner (Tex.Civ.App.) 139 S.W. 1024.

All of the notes contained notations which apparently were made on them after they were executed. For instance, on the notes that had been extended, immediately following the maturity dates as originally written in them appear the years to which they had been extended. These notations were in pencil and followed the maturity dates as written with a typewriter when the notes were made. The original dates were not erased nor is it apparent that it was intended to blot them out or obliterate them. The other entries were on the margins of the notes and all of them, we think, appear to be mere notations, made for convenience, and not alterations of the notes.

In regard to note No. 7, it is clearly at variance with the pleading and we do not think appellee was entitled to a judgment upon it under the pleading on which he went to trial. He sued upon notes payable to himself, and, to prove the case which he had pleaded, he offered in evidence note No. 7, which was payable to Thomas C. Spearman. This was clearly a variance and we think a fatal one. No explanation of it was made in the pleading, and under the pleading this note was not admissible in evidence for any purpose.

We sustain appellant's assignments of error as indicated, and the judgment of the trial court is therefore reversed, and the cause remanded.